CASE 26—PETITION ORDINARY—FEBRUARY 7.

# Johnson vs. Higgins.

APPEAL FROM SCOTT CIRCUIT COURT.

No provision of a statute relating directly or indirectly to the subject expressed in the title, having a natural connection therewith, and not foreign to the same, should be deemed within the inhibition of the 37th *section of article 2 of the Constitution of Kentucky.* The section should receive a reasonable and not a technical construction. (2 *Met.,* 149; *Ib.,* 168; *Ib.,* 219.)

The provisions of the first section of an act entitled "an act to suspend the circuit and other courts in this commonwealth, and for other purposes," approved 24th May, 1861, affect alone the courts—suspending their jurisdiction over a certain class of cases, or limiting it to other cases, for the time mentioned in the act, and therefore relate to the subject of the title.

*Section 15 of article 13 of the Constitution of Kentucky* prescribes certain general duties for the courts of the State, and also lays down general rules for the manner of conducting their business, the effect of which may be thus stated: 1. They are to be held in an open and public manner, and their proceedings are not to be secret, or concealed from public view. 2. They are to administer justice without sale—that is, they are not to accept compensation from litigants; and 3. They are not to deny any one a fair trial, nor to delay the same, except upon sufficient legal grounds for continuance. The section relates altogether to the judicial, and not to the legislative,

Johnson vs. Higgins.

department of the government, and was not designed to regulate either the terms or jurisdiction of the courts.

The principle laid down in the cases of *Blair vs. Williams* and *Lapsley vs. Brashears*, (4 *Littell*, 35, 47,) is recognized as authoritative. In these cases it was settled that the "legal obligation of a contract consists in the remedy given by law to enforce its performance or to make compensation for the failure to perform it."

Laws in regard to courts, prescribing their terms and jurisdiction, relate, not to the *remedy* for enforcing the contract, but to the tribunals by which the remedy is to be administered. Courts, in a legal sense, compose no part of the remedy. (4 *Litt.*, 35, 47.)

The provisions of the first section of the act entitled "an act to suspend the circuit and other courts in this commonwealth, and for other purposes," approved 24th May, 1861—forbidding the courts from rendering judgments for debt, or limiting their jurisdiction to other cases, during the time specified in the act—is not a law impairing the obligation of contracts, although preventing a creditor from obtaining his judgment upon a pre-existing debt as soon as he could have done under the previous law. The section of the act, *supra*, is constitutional.

The legislature may enact any law that is not forbidden by the fundamental law of the land. If the Federal or State constitution does not, in express terms, or by necessary and proper implication, forbid the exercise of such power, the enactment must be adjudged valid and enforceable as a law—courts will not interpose to arrest its operation except upon clear and satisfactory grounds. The judiciary cannot inquire into the motives and necessities which may have superinduced the enactment of the law.

HUNT & BECK, for appellant, cited *1st section act of 24th May*, 1861 ; 2 *Met.*, 221; 3 *Ohio*, 475; 6 *Ib.*, 179 ; *Constitution Ky.*, sec. 1, art. 2 ; *Ib.*, sections 16, 17, art. 4 ; *Ib.*, sec. 16, art. 13 ; 1 *Bibb*, 567 ; 2 *Ib.*, 202 ; 4 *Litt.* 60.

M. C. JOHNSON, on same side, cited *section 1 of act approved 24th May*, 1861.

FRANK WATERS, for appellee, cited 4 *Littell*, 35 ; *Ib.*, 47 ; 5 *Mon.*, 98; 7 *Mon*, 11; *Ib.*, 50 ; *Ib.*, 588 ; 1 *J. J. Marsh.*, 284 ; 7 *B. Mon.*, 168 ; 13 *B. Mon.*, 285; 12 *Wheaton*, 213 ; and the various sections of the State and Federal constitutions touching the questions involved.

CHIEF JUSTICE STITES DELIVERED THE OPINION OF THE COURT:

On the 24th May, 1861, the general assembly passed an act entitled, "*an act to suspend the circuit and other courts in this commonwealth, and for other purposes,*" which provided that it should take effect from its passage. The first section of the act reads as follows :

"*Section* 1. That all laws requiring circuit courts, equity and criminal courts, quarterly courts, justices courts, and all police,

town, and city courts, except for the trial of criminal and penal causes, in this commonwealth, be and they are hereby repealed until the first day of January, 1862 :  *Provided*, That after the expiration of said time, said courts shall be held and governed by all the laws now in force :  *And, provided further*, That all civil process of every kind, returnable to said terms, shall be continued until the next regular terms of said courts after the first day of January, 1862; and nothing herein contained shall be construed so as to interfere in any manner whatever with the trial of criminal and penal causes in said courts at their regular terms, as though this act had not taken effect :  *And, provided further*, That the circuit court of Boyle county shall be held at its regular August term for the trial of all contested cases remaining on the docket of said court at the February term, 1861.   That the several judges of the equity and circuit courts shall hold the terms of their several courts at the times now fixed by law for the trial of criminal and penal prosecutions, and for the purpose of the assignment of dower, for the trial of cases of divorce, for the probate of wills, for making the partition of land, ordering the distribution of estates ratably among the creditors, and for the trial of actions of tort, actions of forcible entry and detainer, and forcible detainer, and cases where title to land or other property is in dispute, or where the boundary of land is involved, or a party is seeking to establish or complete, by judgment or order of court, title to lands, and all causes between principal and agent, between trustees and *cestui que trust*, and for all other cases of law or equity, *where a decree or judgment for money is not to be rendered*, and for the taking of all proper steps for the preparation of cases in said courts."

In April, 1861, appellee brought his action againt appellant upon a promissory note which had matured in March before. And at the May term, 1861, of the Scott circuit court, just five days after the enactment of the foregoing law, a judgment was rendered in said action against the appellant for the sum of ten thousand dollars—the amount of the note not controverted. From that judgment he has appealed; and the only question

to be considered is, whether the circuit court had power, notwithstanding said law, to render the judgment complained of.

The ground relied on in support of the judgment and action of the circuit court is, that the section of the act, just cited, is unconstitutional and void.

It is said that it is in violation of the following provisions of the State Constitution:

*Section* 37 *of article* 2, which declares, that "no law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title."

*Section* 15, *article* 13, which declares "that all courts shall be open, and every person for an injury done him in his lands, goods, person, or reputation, shall have remedy by due course of law; and right and justice shall be administered without sale, denial, or delay."

*Section* 20, *same article*, which provides "that no *ex post facto* law, nor any law impairing contracts, shall be made."

And that it also violates *section* 10 *of article* 1, *of the Federal Constitution*, which forbids a State from enacting laws impairing the obligation of contracts; and is opposed to the general spirit and intent of both State and Federal constitutions.

1. The meaning and effect of *section* 37 *article* 2 of our State constitution, *supra*, has been determined by this court in several cases. (*Chiles vs. Drake*, 2 *Met.*, 149; *Phillips vs. Cov. & Cin. Bridge Co., Ib.*, 219; and *Louisville and Oldham Turnpike Road Co. vs. Ballard, Ib.*, 168.)

The rule is, that the section should receive a reasonable and not a technical construction; and, that no provision of a statute relating directly or indirectly to the subject expressed in the title, having a natural connection therewith, and not foreign to the same, should be deemed within the constitutional inhibition.

In view of this rule, the propriety of which cannot be doubted, there is but little difficulty in disposing of the first point.

The subject of the law, the matter concerning which the general assembly acted, was the courts—the circuit and other courts of the State—one general subject, but divisible into

several classes, each, however, connected with and akin to the other, and relating to the matter expressed in the title.

That the first section, with which alone we have now to do, relates to the subject of the title is too plain to need remark. Its provisions affect alone the courts—suspending their jurisdiction over a certain class of cases, or limiting it to other cases, for the time mentioned in the act.

In *Phillips vs. Cov. and Cin. Bridge Co.*, *supra*, the title of the act was "*an act to amend the charter of the Covington and Cincinnati Bridge Company.*" It was objected that a section thereof, which authorized the city of Covington to take stock in the bride company, and to raise means for its payment, was incongruous with the title and therefore void. It was held otherwise, and the section was sustained, because it related to the bridge company—the subject of the title. And the same principle was, in effect, enunciated in *Chiles vs. Drake* and *Louisville and Oldham Turnpike Road Co. vs. Ballard*, already cited.

That more appropriate words might, in this case, have been selected to denote the subject matter of the act, cannot be denied; but the failure to select or use such terms cannot affect the validity of the act or section, provided its subject matter, as here, is sufficiently indicated by the language of the title.

Nor do we think that *section* 15, *of article* 13, *of the State Constitution*, *supra*, has been violated by the section of the act in question.

This provision is found in the bill of rights. It prescribes certain general duties for the courts of the State, and also lays down general rules for the manner of conducting their business, the effect of which may be thus stated : 1. They are to be held in an open and public manner, and their proceedings are not to be secret or concealed from public view. 2. They are to administer justice without sale—that is, they are not to accept compensation from litigants ; and 3. They are not to deny any one a fair trial, nor to delay the same, except upon sufficient legal grounds for continuance.

The terms and import of this provision show that it relates altogether to the judicial department of the government, which is to administer justice "by due course of law," and not to the

legislative department, by which such "due course" may be prescribed.

Any other construction would make it inconsistent with other clauses of the constitution, and, in fact, render it practically absurd.

To say, for instance, that it demands that courts shall be constantly in session, would virtually deny to the legislature the power to fix the terms of the several courts throughout the State—a power indispensably necessary for the performance of other duties expressly enjoined upon that body by *sections* 16 *and* 19 *of article* 4, to-wit, to establish circuit courts in each county, and to divide the State into judicial districts, having due regard to business, population, and territory; because, with the number of circuit judges, limited as it is by the constitution, it would be impossible so to arrange the judicial districts as to establish a circuit court in each of the one hundred counties of the State, and provide for the holding thereof by a circuit judge, without fixing the terms of the courts, and so limiting the number of juridical days as to enable him to preside, at such stated periods, in the several counties of his district. Such a thing as constant sessions of the circuit courts in each county of the State, we suppose, was not thought of by the framers of the constitution.

Again : To say that the provision was, in anywise, designed to regulate the jurisdiction of the courts, would at once bring it into collision with *article* 4, *section* 17, which, in so many words, gives that power to the legislature. It is hardly possible that the framers of the constitution would have conferred such a power upon that body, and, in another clause of the same instrument, effectually prevented its exercise.

But it is supposed that further remark upon this point is unnecessary. It seems obvious that the section of the constitution referred to presented no obstacle to the exercise of the legislative power complained of.

We are now to consider whether the section of the act in question comes in conflict with the provisions of the Federal and State constitutions, forbidding the enactment of laws impairing the obligation of contracts ; and as said provisions are

similar in effect, if not in terms, they may be treated as one and the same prohibition, so far as they relate to the act before us.

The meaning, effect, and scope of this constitutional inhibition were thoroughly and ably discussed by this court in the celebrated cases of *Blair v. Williams and Lapsley vs. Brashears*, (4 *Littell*, 35, 47.) In these cases it was settled, that the "legal obligation of a contract consists in the remedy given by law to enforce its performance, or to make compensation for the failure to perform it." And, in accordance with this view, the act of 1820—commonly called the two-years replevin or stay law—whereby the defendant in an execution was allowed to stay its collection for two years, unless the plaintiff would consent to receive in satisfaction thereof notes on the Bank of Kentucky or the Commonwealth's Bank—was pronounced unconstitutional and void as to pre-existing contracts, because it impaired their obligation, or the legal remedy whereby they could be enforced.

These cases, and the doctrine they establish, are relied on to show that the section of the act before us is a direct infraction of said constitutional prohibition.

It is contended that so much of it as forbade the courts from rendering judgments for debt, or limited their jurisdiction to other cases, during the time specified in the act, impaired appellee's legal remedy to enforce his contract, by preventing him from obtaining his judgment as soon as he could have done under the previous law, and that, therefore, to such extent, it impaired the obligation of his contract, and is within the principle stated.

The principle laid down in said cases is recognized as authoritative, but, in our judgment, it is not applicable to the case in hand.

This act, or rather the 1st section thereof, relates not to the *remedy*, whereby a contract is to be enforced, but to the courts of the State which *administer* the remedy. It does not, like the act of 1820, *supra*, undertake to alter contracts, by prescribing either what kind of funds the creditor shall receive, or what additional time he shall give to his debtor. Its whole province

is to fix the periods within which the courts shall or shall not hear and decide such cases, and to prescribe what business they may or may not transact within such times. It is, in other words, substantially, an act to limit—to regulate—the jurisdiction of the courts, an exercise of power over a subject placed, as we have seen, expressly within the control of the legislature by the constitution, and which, so far as we know, has never been denied to it, or seriously questioned, since the organization of the State.

The legislative history of the State furnishes many instances of the exercise of this power, one of which we mention as similar in some respects to that now objected to.

By the law in force prior to the winter of 1842–43, the circuit courts throughout the State were required to hold three regular terms a year in each county, at which any business could be done; thereby giving to the creditor, at either term, the right to bring his action and obtain judgment for debts maturing just prior thereto. And, upon debts within the jurisdiction of a justice, he could sue at any time, and have his judgment, after proper service, without waiting for a regular term every three months.

By an act, however, passed during the session of 1842–43, (*session acts*, 1842–43,) the summer terms of the circuit courts, for the transaction of common law business, were abolished, and justices were allowed to hold their courts only four times a year.

The effect of this law upon creditors was, to some extent, to postpone the obtention of judgments on their demands, and yet, we suppose, the power of the legislature in this instance has not been seriously doubted, nor the law regarded as impairing the obligation of contracts.

Suppose, in the case before us, the act had been simply to postpone the Scott circuit court to the first Monday in June, and to take effect from its passage. This would have delayed the appellee in the procuring of his judgment upon the note; but could it have been regarded as impairing the obligation of his contract? Or, suppose the act had declared that there should be but one term of the circuit court in each county in

the State, and had fixed that term in Scott in September following its passage. Would it have been deemed within the constitutional inhibition? Certainly not. And for the reason that such legislation in regard to courts, prescribing their terms and jurisdiction, relates, not to the *remedy* for enforcing the contract, but to the tribunals by which the remedy is to be administered.

But, upon this point, we have the opinion of our predecessors in the case of *Lapsley v. Brashears, supra*, which it is thought best to give in the words of the distinguished jurist, (Judge Owsley,) who delivered the opinion :

"But (remarked the court,) it was said in argument, that if our construction of the constitution prevails, the same system of courts must irrevocably remain, without even being subject to the control of the legislature, as to the time of their sessions, contrary to the invariable practice of all the States in the Union.

"The conclusion is not, however, admitted to follow from the premises assumed. To give the argument any sort of plausibility, the position must first be established that courts constitute a part of legal remedies. But we deny the correctness of the position. Courts are erected for the purpose of deciding contested rights, when those rights are drawn in question, and brought before them through the instrumentality of remedies prescribed by law; but courts exist independent of those remedies, *and, in a legal sense, compose no part of them.* To create, alter, and abolish courts, and to change their sessions, is a subject which falls properly within the sphere of legislative discretion, and we know of no provision in the constitution which limits the power of the legislature upon that subject, except as to abolishing such courts as the constitution has established—though in exercising that power private rights may be incidentally affected."

Now, the section of the act complained of does not alter or abolish the courts, nor does it change their sessions. It does less than either—it merely prescribes what business they may do within a certain period of time ; or, in other words, it limits their jurisdiction, during such period, to certain classes of

cases—a species of legislation of common occurrence, and undoubted constitutionality.

For instance, some of the courts are required by law, at certain terms, to transact only criminal business, and at *called* terms nothing but criminal and chancery business can be done. What difference, in principle, is there between this kind of legislation and the act or section before us? Both forbid the transaction of certain description of business by the courts for specified times, and allow other business to be done during the same period; and both are, in effect, mere legislative regulations of the jurisdiction of the courts.

Suppose at a called or special term of a circuit court an attempt should be made to render a judgment for debt in an action by ordinary proceedings, could such action be upheld, or would such judgment be deemed valid? Most assuredly not. And why? Because the courts are to administer justice "by due course of law," and they have no power to render judgments except at terms prescribed by law for the transaction of such business, or the trial of such cases, or at which such business is allowed by law to be done. Such procedure would be, emphatically, *coram non judice*, and the judgment void, because forbidden by law; and why the judgment now complained of, which was also in disregard of a legislative regulation or inhibition, should be deemed operative and valid we confess ourselves unable to perceive.

We conclude, therefore, that the section of the act referred to does not conflict with the constitutional provisions prohibiting the enactment of laws impairing the obligation of contracts.

The objection that the purpose and evident design of the legislature, as manifested by the act, is in opposition to the spirit and intent of the constitution, may be briefly disposed of.

The intent and spirit of the constitution are to be gathered alone from its provisions. If the framers of that instrument had intended to interpose any restriction upon the legislature in regard to the jurisdiction or power of the courts, it is due to their wisdom and intelligence to suppose that they would have, in an appropriate manner, so expressed themselves, and not

left such an important matter to mere inference or construction. And especially is this supposition to be indulged, when we remember that the doctrine, which teaches that the legislature may enact any law that is not forbidden by the fundamental law of the land, had been well established and received, prior to the formation or adoption of the present constitution.

The duty, and sole duty, of this department of the government, when the constitutional power of the legislature to enact a law is questioned, is to look to the provisions of the Federal and State Constitutions, and if they do not, in express terms, or by necessary and proper implication, forbid the exercise of such power, the enactment must be adjudged valid and enforceable as a law. Beyond the constitutional restrictions, thus to be interpreted, the only limits upon the State legislature in enacting laws are its own wisdom, sound judgment, and patriotism. And it may be added, that in doubtful cases, where it is not clear that the fundamental law has not been invaded, courts rarely, if ever, interfere to arrest the operation of legislative enactments. Respect for the wisdom of a co-ordinate department of the government, as well as sound policy, forbids such interposition, except upon clear and satisfactory grounds.

Something has been said as to the motives and necessities which may have superinduced the enactment of the law. Of these matters it becomes us not to speak. Such inquiries relate, not to the constitutionality of the law, but to its policy, and pertain properly to the legislative, and not to the judicial department of the government.

Our opinion, therefore, is, that the first section of the act in question is not unconstitutional, but is valid and enforceable as a law. And as the judgment complained of disregards said section, it is deemed erroneous and unauthorized.

Wherefore said judgment is *reversed*, and cause remanded for further proceedings not inconsistent with this opinion.