*In re* REBECCA E. SCHLEY, *Petitioner.*

No. 14,046.   (80 Pac. 631.)

SYLLABUS BY THE COURT.

CHARITIES AND CORRECTIONS—*Act of 1901 Held Valid.* Chapter 353, Laws of 1901 (Gen. Stat. 1901, sec. 6521 *et seq.*), entitled "An act relating to charities and charitable and reformatory institutions, and providing penalties for violations of the provisions of this act, and repealing all acts and parts of acts in conflict herewith," the body of which act provides for inquests in lunacy, does not thereby contravene section 16 of article 2 of the constitution, which provides that "no bill shall contain more than one subject, which shall be clearly expressed in its title." The procedure in inquests in lunacy provided for in the act is germane to the subject and has a natural connection therewith.

Original proceeding in *habeas corpus.* Opinion filed April 8, 1905. Writ denied.

*Hazen & Welch,* and *H. W. Page,* for petitioner.

*Troutman & Stone,* and *Redden, McKeever & Gilluly,* for respondent.

The opinion of the court was delivered by

GREENE, J.: This is an original proceeding in *habeas corpus.* In an inquest in lunacy, held by the probate court of Shawnee county, Rebecca G. Hughes was adjudged insane and Robert Stone appointed her guardian. The petitioner, Rebecca E. Schley, institutes this proceeding to have the judgment of the probate court set aside.

The petition alleges that upon the complaint of one George T. Hughes the probate court appointed a commission of two physicians to make an examination and report of the mental condition of Rebecca G. Hughes. The physicians returned to the court their certificate under oath that Rebecca G. Hughes was found to be not insane, and not a proper person for care and treat-

ment in any of the state hospitals for the insane. The court approved the certificate and report, and adjudged that Rebecca G. Hughes was not insane and entered such judgment of record on the 15th day of December, 1902. On the 17th day of December, 1902, George T. Hughes made a written application to the court asking that the proceedings and judgment theretofore had and entered in the previous inquest be set aside and a rehearing allowed. The application was granted and a rehearing ordered. The judgment entered upon the record of the probate court adjudging Rebecca G. Hughes not insane was not set aside of record. Upon such rehearing a commission of two physicians was appointed by the court to make the examination. This commission returned a certificate finding that Rebecca G. Hughes was of unsound mind and incapable of attending to her business affairs.

The first contention of counsel for the petitioner is that the judgment entered in the original proceeding was not set aside of record and, therefore, that the subsequent proceeding is void. To this contention we do not agree. The probate court, by granting the rehearing, and holding the subsequent inquest, and rendering and entering a judgment of insanity on the certificate of the commission, necessarily treated the former judgment as set aside, and we shall so treat it.

The principal contention of the petitioner is that chapter 353, Laws of 1901 (Gen. Stat. 1901, § 6521 *et seq.*), under which the inquest in lunacy was held, is unconstitutional. The claim is that the act contains two subjects, one of which is not expressed in the title. The title to the act is: "An act relating to charities and charitable and reformatory institutions, and providing penalties for violations of the provisions of this act, and repealing all acts and parts of acts in conflict herewith." The act, after making provisions for a board of trustees under whose control the charitable and reformatory institutions of the state shall be con-

ducted, and giving such board the control of all insane persons in the state, whether in or out of the asylums, proceeds to prescribe a procedure for holding inquests in lunacy in the probate courts. It is contended that the two subjects are: (1) The maintenance of charitable and reformatory hospitals; (2) the establishment of a code of judicial procedure for inquests in lunacy; and, therefore, that the act, so far at least as the procedure is concerned, is within the inhibition of section 16 of article 2 of the constitution, that "no bill shall contain more than one subject, which shall be clearly expressed in its title."

The object of the adoption of this constitutional limitation on the power of the legislature was to abolish a growing practice in this department of government of combining in one bill provisions relating to several different subjects, none of which could be enacted separately, but, thus combined, sufficient strength could be obtained to pass them. As tersely expressed in the case of *The State of Missouri v. Miller*, 45 Mo. 495, "it was intended to kill 'log-rolling.'" Another equally bad practice was to place provisions relating to several incongruous subjects in one bill under one title, the first section referring to the subject expressed in the title, and thus procure the enactment of all of them without the deception's being detected. In determining whether a particular act is subject to the objection urged courts are controlled by the following rules, which obtain in construing other constitutional provisions: (1) The constitution should be liberally construed to give to the lawmaking power all freedom not positively prohibited by the constitution; (2) the act under consideration should be given a liberal construction, and all doubts will be resolved in favor of its constitutionality, for the purpose of carrying into effect the will of the legislature. These rules are elementary.

In the case of *Blaker v. Hood,* 53 Kan. 499, 511, 36 Pac. 1115, 1117, 24 L. R. A. 854, it was said:

"As has been held, this constitutional provision is not to be construed in any narrow or technical sense, but liberally on one side, so as to guard against the abuse intended to be prevented by it, and liberally on the other side, so as not to embarrass or restrict needed legislation."

In the case of *Montclair v. Ramsdell,* 107 U. S. 147, 155, 2 Sup. Ct. 391, 397, 27 L. Ed. 431, this rule of construction was stated in this way:

"The objections should be grave, and the conflict between the statute and the constitution palpable, before the judiciary should disregard a legislative enactment upon the sole ground that it embraced more than one object, or if but one object, that it was not sufficiently expressed by the title."

In the case of *Johnson v. Higgins,* 60 Ky. 566, 569, it was said:

"The rule is, that the section should receive a reasonable and not a technical construction; and, that no provision of a statute relating directly or indirectly to the subject expressed in the title, having a natural connection therewith, and not foreign to the same, should be deemed within the constitutional inhibition." (See, also, *Ryerson v. Utley,* 16 Mich. 269.)

The position of this court has been indicated in many decisions. It was held in *Woodruff v. Baldwin,* 23 Kan. 491, that the title "An act to establish a code of criminal procedure" was sufficient to include in the act the provision treating solely of the management of the estates of convicts. In the case of *Comm'rs of Cherokee Co. v. The State, ex rel.,* 36 Kan. 337, 13 Pac. 558, it was held that an act entitled "An act to authorize the board of county commissioners of Cherokee county to build a court-house, and to build and to pay for bridges in said county, and to provide a fund therefor," contained but one subject—to provide a fund for public improvements. In the case of *The*

*State v. Bush,* 45 Kan. 138, 25 Pac. 614, it was held that an act entitled "An act to provide for and to regulate the registration of voters in cities of the first and second class, and to repeal all prior acts in relation thereto," was broad enough to contain a provision for the punishment of all persons violating any of the provisions of the act.

In the case of *In re Sanders, Petitioner,* 53 Kan. 191, 198, 36 Pac. 348, 349, 23 L. R. A. 603, the question of the constitutionality of section 4 of chapter 129, Laws of 1881, was before the court. The title was "An act to provide for the organization and management of the state reform school." Section 4 authorized the probate courts to commit to the reform school boys under the age of sixteen years, under the conditions therein set forth. The court said:

"Construing all of the words of the title of chapter 129, we think there is sufficient therein to authorize something more than provisions to merely systematize and regulate an existing school, or an existing place of discipline, instruction, or training. Evidently, the legislature intended by the title one whose scope was broad enough to embrace the bringing together, the collecting, and the furnishing of pupils or inmates to or for a reform school. . . .

"The general rule is that, in determining whether an act of the legislature is constitutional, it is the duty of the courts to give such construction to it, if possible, as will uphold all of its provisions. Then, again, it is not necessary that the title to an act should be a synopsis or abstract of the entire act in all its details; it is sufficient if the title indicate clearly, though in general terms, the scope of the act."

If the matter under consideration be not incongruous with the subject in the title, but germane thereto, and have a natural connection therewith, it is not subject to the constitutional objection. Case law can give us but little assistance in determining whether any particular act comes within the inhibiting provi-

*In re* Schley.

sion of the constitution; it may, however, assist in the application of general principles.

The subject of this act is the direction and control of charitable and reformatory institutions, and, as expressed in the first section, "this act shall be known as 'The Code of Charities and Corrections of the State of Kansas.'" Its object is to maintain, manage and control the state hospitals, the state schools for feeble-minded youth, the deaf, and the blind, the soldiers' orphans' home, the industrial schools for girls and for boys, and all other charitable and reformatory institutions of the state, excepting the industrial state reformatory, at Hutchinson.

By section 27 "the administration and enforcement of the laws relating to the insane of this state and their treatment in or out of hospitals or asylums for the insane is entrusted to the state board of charities and corrections." The object of the act was to provide for the care of the unfortunate and, if possible, reform the viciously inclined youth of Kansas. The proceedings to bring those relying upon public charity, as well as those contemplated by the reformatory provisions of the act, into the public hospitals, and under the direct supervision of the trustees thereof, are germane to the subject of the act, and have a natural connection therewith. Such procedure is necessary to the accomplishment of the object of the act.

The application is denied.

All the Justices concurring.