## Greene, Auditor v. Gilbert, Superintendent of Public Instruction.

(Decided February 9, 1916.)

### Appeal from Franklin Circuit Court.

1.  Schools and School Districts—School Fund—Appropriation From —Limitation.—The provision of section 4371, Kentucky Statutes, that the resources of the school fund of Kentucky shall not be drawn out or appropriated except to pay the expenses of the State Department of Education and in aid of common schools, is not an appropriation out of that fund of any money, whatsoever, but is merely a limitation upon the purposes for which that fund may be used.

2.  Statutes—Construction—Use of Fund by Administrative Official.— The clearest and most explicit language will be required in a legislative act before the courts will hold it to give an administrative official unlimited and unrestricted right to the use of a fund for any purpose.

3.  Statutes—Clerical Assistant—Salary—Amount Fixed by Statute Conclusive.—Where the salary of a clerical position in a State department is definitely fixed by statute, the amount so fixed is conclusive.

4.  Statutes—Contemporaneous Construction.—The doctrine of contemporaneous construction will not be applied where the meaning of a statute is plain, easily understood and hardly susceptible of misconstruction.

M. M. LOGAN, Attorney General, and CHARLES H. MORRIS, Assistant Attorney General, for appellant.

A. L. GILBERT for appellee.

OPINION OF THE COURT BY JUDGE TURNER—Reversing.

Appellant is the Auditor of Public Accounts of this State, and the appellee the Superintendent of Public Instruction, and the term of each began on the first Monday in January of this year.

On the 28th of January the appellee made out and presented to the Auditor the salary list of the Superintendent's office for the month of January, 1916, as follows:

| | |
|---|---:|
| C. L. Timberlake, salary, Jan. 4-31 | $58.50 |
| Elizabeth Simpson, to stenographer, Jan. 4-31 | 90.00 |
| W. D. Embry, to stenographer, Jan. 4-31 | 90.00 |
| Mrs. Bettie Harris, to stenographer, Jan. 4-31 | 67.50 |
| A. L. Gilbert, to stenographer, Jan. 4-31 | 90.00 |
| Virginia Watts, to stenographer, Jan. 4-31 | 90.00 |
| Nancy Cross, to stenographer, Jan. 4-31 | 112.50 |
| Paul Meagher, to stenographer, Jan. 4-31 | 112.50 |
| Narcie Matthews, salary (inspection clerk), Jan. 4-31 | 75.00 |
| Ross Pogue, salary (inspection clerk), Jan. 4-31 | 75.00 |
| Corbett Stephenson, salary (inspection clerk), Jan. 4-31 | 75.00 |
| M. F. Pogue, salary (inspection clerk), Jan. 4-31 | 75.00 |
| Lucy Pattie, salary, Jan. 4-31 | 75.00 |
| H. Marion, salary, Jan. 4-31 | 75.00 |
| V. M. Chaplin, Jr., salary, Jan. 4-31 | 112.50 |
| V. O. Gilbert, salary as Superintendent, Jan. 4-31 | 300.00 |

The Auditor refused to draw his warrants for the first eight items contained in this list upon the ground that there was no authority of law for the same, and the Superintendent has filed this action asking for a mandamus to require the payment thereof.

In the circuit court the defendant filed a demurrer to the petition, which was overruled, and upon his declining to plead further the mandamus was granted as prayed for, and the Auditor has appealed.

Section 4385, Kentucky Statutes, is a part of an act dealing with the office of Superintendent of Public Instruction, and provides as follows:

"His salary shall be two thousand five hundred dollars per annum; besides which he shall be entitled to all office fixtures, stationery, books, postage, fuel and lights needed to carry on the work of his office. He shall have power to appoint three clerks, namely, a chief clerk, whose salary shall be fifteen hundred dollars per annum; a first clerk, whose salary shall be one thousand dollars per annum, and a second clerk, whose salary shall be eight hundred and fifty dollars per annum. Said salaries to be paid monthly out of the common school fund."

Section 4535f, Kentucky Statutes, is an Act of 1912 dealing with the inspection and examination of schools in this State, and the first sub-section thereof is as follows:

"That the State Superintendent of Public Instruction be and is hereby authorized to act as special State inspector and examiner of all schools in cities, towns and counties in the Commonwealth receiving funds directly or indirectly from the State or said cities, towns and counties. The State Superintendent of Public Instruction before entering upon this special duty shall take an oath before someone qualified to administer the oath to faithfully and diligently perform the duties of this office, and shall execute bond with good and sufficient security, to be approved by the Governor, in a sum not to exceed ten thousand dollars, which bond shall be filed with the Secretary of State.

The Superintendent of Public Instruction shall receive annually, for such special duty, the salary of $1,500.00, payable monthly out of the State school fund. He shall have power to appoint two assistants at salaries of one thousand dollars per annum, and all necessary contingent and traveling expenses for himself and his assistants, when on business pertaining to these official duties. He shall be allowed not to exceed two thousand dollars per annum for additional clerk hire for this department, in connection with the State Department of Education, that the State Department may be made more efficient in the conduct, supervision, management and inspection of the schools and school revenues of the Commonwealth. These salaries and necessary expenses thus incurred shall be paid by the treasurer and charged to the common school fund, and the superintendent is hereby authorized to make monthly requisitions on the Auditor for such salaries and expenses and that he render an itemized account of the same."

It will be observed that in the first section quoted the salary of the Superintendent is fixed at $2,500.00, there are provided for his office certain fixtures, stationery, etc., and he is authorized to appoint three clerks at salaries of $1,500.00, $1.000.00 and $850.00; and in section 4535f the Superintendent himself is authorized to act as special inspector and examiner of schools, and for such work is allowed the salary of $1,500.00 per annum, and is authorized to appoint two assistant inspect-

ors at salaries of $1,000.00, and is allowed $2,000.00 per annum for additional clerk hire for joint use in the De partment of Inspection and the State Department of Education. These salaries and expenses are payable monthly out of the State school fund.

The two sections quoted constitute the only authority to which we have been referred, or which we have been able to find, authorizing the employment by the Super-intendent of persons in his office.

The two sections quoted authorize an annual expenditure by the Superintendent, including his own salary as Superintendent and as State Inspector of Schools, of $11,350, and therefore there is no authority of law for a monthly payroll in excess of $945.83, unless it is elsewhere given.

It is contended by the appellee that under the provisions of section 4371 of the Kentucky Statutes he is authorized to pay any and all expenses of his office out of the common school fund, and that, therefore, it is the duty of the Auditor to issue his warrants for these amounts, as they are necessary expenditures in an efficient conduct of his office.

Section 4370 designates in six sub-sections what shall constitute the common school fund of this State; and then it is provided in the very next section—4371—as follows, to-wit:

"The foregoing shall constitute the annual resources of the school fund of Kentucky, and shall be paid into the treasury, and shall not be drawn out or appropriated, except to pay the expenses of the State Department of Education of whatever character or kind, and in aid of common schools, as provided in this chapter."

It is under this last section that the appellee claims the right to exceed the appropriations provided for in the first two sections quoted, in the management and conduct of his office. The contention is, as we gather it, that because the Legislature in that section provided that the resources of the school fund should not be drawn out or appropriated "except to pay the expenses of the State Department of Education of whatever character or kind, and in aid of common schools, as provided in this chapter," that this was equivalent to an appropriation by the Legislature of as much money out of the school fund to pay the expenses of the State Department of Education as the Superintendent of Public Instruc-

tion might deem necessary for that purpose, and that no fiscal officer of the State has the right to question his unlimited authority in that regard.

Section 4371 not only falls far short of being an appropriation of any money, but even a casual reading of it in connection with section 4370 conclusively shows that instead of being an appropriation of money it is solely a limitation upon the purposes to which the resources of the school fund may be put. Manifestly it was passed by the Legislature to comply with the provisions of section 184 of the Constitution that the school fund should be held inviolate for the purpose of sustaining a system of common schools and appropriated to no other purpose.

Under the provisions of the section of the Constitution referred to it was questioned whether the expenses of the Department of Education, as provided in section 4371, might be properly paid out of the school fund, and a test suit raising that question was brought, and this court held in Supt. of Public Instruction v. The Auditor, 97 Ky., 180, that such expenses might be paid out of that fund.

The contention that the opinion in that case upholds the view of the appellee here is not well founded; that opinion only holds that the expenses of the Department of Education may properly be paid out of the school fund, when appropriated by the Legislature, but it nowhere intimates or suggests that section 4371 is an appropriation of any sum, whatever, out of that fund.

If appellee's construction of section 4371, which is a part of an Act of 1893, is correct, and the Superintendent is given therein the authority to use so much of the school fund as may be deemed necessary by him in the payment of the expenses of his office, why did the General Assembly deem it necessary to pass the Act of 1912 giving to him two assistant inspectors and a specific sum for additional clerical assistance? The Act of 1912 would clearly seem to be a legislative interpretation of section 4371 directly contrary to that contended for by the Superintendent, if any such interpretation was needed. In any event, the court would require the clearest and most explicit language before it would be justified in holding any act to give to an administrative official unlimited and unrestricted right to the use of a fund for any purpose; and particularly where it is declared in the Constitution that such fund is to be held inviolate

for specific purposes, and even the right of the Legislature to appropriate the same to any other purpose is withheld.

An inspection of the salary list in the record discloses that some of the assistants and clerks provided for in sections 4385 and 4535f, and whose salaries are fixed in those sections, are not being paid the amount of salary provided by law, and we have deemed it not improper to say that where the salary of a clerical position is definitely fixed by law, that is conclusive of the salary to be paid.

But, finally, resort is had to the doctrine of contemporaneous construction, and it is insisted that even though technically section 4371 may not be construed to give the Superintendent unlimited authority in the employment in his department of clerical assistants, yet that inasmuch as it has been given that interpretation by all public officials charged with the duty of acting under it, that the court should now give it the same construction. But this doctrine applies only where a statute is really uncertain, ambiguous and difficult of understanding, and does not apply, as in this case, where the meaning is plain, easily understood, and hardly susceptible of misconstruction. Bosworth, Auditor v. Marshall, County Attorney, 165 Ky., 32.

The General Assembly alone has the power to appropriate public money, and if the necessity for this clerical assistance exists, the application for the money to procure it must be made to the proper branch of the government.

The judgment is reversed with directions to sustain the demurrer and dismiss the petition.

Whole court sitting.