## State Board of Charities and Corrections and H. V. Bastin, Superintendent State Reformatory v. Combs.

(Decided January 27, 1922.)

### Appeal from Franklin Circuit Court.

1. Statutes—Subjects and Titles of Acts—Amendments.—The provision of section 51 of the Constitution, which provides that an act of the legislature shall have but one subject and that shall be expressed in the title, and the enforcement of which renders invalid, the contents of the act, which are not germane to the subject, expressed in the title, applies to an amendatory act, the same as to an original act.

2. Statutes—Subjects and Titles of Acts.—An act, the subject of which is an amendment of a specified act and its re-enactment in the amended form, without further description of the contents of the act, is restricted by its title to dealing with the subject or branch of a general subject and provisions which are germane thereto, which are dealt with in the original act.

3. Statutes—Subjects and Titles of Acts.—Section 1136a, Kentucky Statutes, is not invalid, as being not covered by and germane to the title of the act of 1916, which was entitled, "An act to repeal and re-enact chapter 19, Session Acts, 1914, which was an act relating to the trial and punishment of persons convicted of a felony or misdemeanor."

4. Statutes—Amendments.—A provision of an amendatory act, which is germane to its title, works a repeal of the provision of a previously existing statute, which is repugnant to the one contained in the amendatory act, although the previously existing statute is not mentioned in the title nor body of the amendatory act.

5. Statutes—Subjects and Titles of Acts.—Whatever is naturally connected with and not foreign to the subject of an act, expressed in its title, is germane thereto.

6. Prisons—Discretion of Board to Allow Credit Upon Sentence.—A rule adopted by the Board of Charities and Corrections, under section 1136a, Kentucky Statutes, which allows a felon seven days' credit upon his sentence, for each month, for the first year of his term, eight days for each month during the second year of his term, and ten days for each month of the third and succeeding years of his sentence, for good conduct, is not arbitrary or unreasonable and is not an abuse of discretion on the part of the board, in its administration of the statute.

7. Prisons—Credit of Prisoners for Good Conduct.—Under section 1136a, Kentucky Statutes, the amount of credit to be allowed a felon, for each month of his term, for good conduct, is a matter to be determined by the Board of Charities and Corrections in accordance with rules to be adopted by them, but the credit can not exceed ten days in each month.

8. Prisons—Credit of Prisoners for Good Conduct.—Under section 1136a, Kentucky Statutes, the credit to be allowed a felon upon his sentence, is determined by the Board of Charities and Corrections from the conduct of the prisoner, and hence the credit for behavior to be allowed a prisoner, will be after the prisoner has earned the credit by being of good conduct for the period of the the month.

CHAS. I. DAWSON, Attorney General, for appellants.

EDWARDS, OGDEN & PEAK for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Reversing.

The appellee, Kilos Combs, was convicted of felonious housebreaking, and sentenced to imprisonment in the State Reformatory at Frankfort, Ky., for a term of two years. He was committed to the institution on the 24th day of March, 1920, to undergo the sentence imposed upon him. On the 29th day of September, 1921, insisting that under the provisions of section 1136a, Kentucky Statutes, and in accordance with a proper administration of the law provided by such statute, that he was entitled to be discharged from the institution on the 26th day of September, 1921, he brought this action for a writ of mandamus against the appellants, State Board of Charities and Corrections and the Superintendent of the Reformatory, requiring them to grant him freedom from the institution. The writ was granted, and the defendants have appealed from the judgment.

The appellants insisted in the circuit court and insist here that section 1136a, *supra,* is void, because enacted in violation of section 51 of the Constitution, and for that reason the provisions of the section are not to be applied; and, further, that if the statute contained in section 1136a, *supra,* is valid and enforcible that in accordance with its proper construction and administration and under the rules and regulations which it authorizes the State Board of Charities and Corrections to adopt, and which have been adopted by it, the sentence of appellee would not expire until January 13, 1922. The judgment of the court was adverse to the contention of appellants upon each of these matters in controversy.

(a) If the statute is void, because violative of section 51 of the Constitution, it will be unnecessary to construe its provisions, or to consider the powers of the

Board of Charities and Corrections under it, and hence we will first determine whether or not it was enacted in violation of the requirements of the Constitution. Section 51 of the Constitution, which it is insisted that it was enacted in violation of, is as follows:

"No law enacted by the General Assembly shall relate to more than one subject, and that shall be expressed in the title, and no law shall be revised, amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revised, amended, extended or conferred shall be re-enacted and published at length."

At the legislative session of 1914, a statute was enacted under the following title:

"An act concerning the trial and punishment of persons indicted for a felony or misdemeanor."

By this act the legislature enacted what is known as the "indeterminate sentence law" which made it the duty of the jury, where one was found guilty of a felony, the punishment of which was imprisonment for a term of years, to fix the period of imprisonment between a minimum and a maximum number of years, and the duty of the court was to adjudge the felon to an indefinite term of imprisonment in accordance with the verdict of the jury. The act, also, provided that "persons sentenced to imprisonment by confinement in the penitentiary shall be kept at hard labor."

The act further provided that all acts and parts of acts in conflict with it were repealed.

The act was designated in the Session Acts of 1914 as Chapter 19.

Thereafter, in 1916, an act was adopted by the General Assembly, the two sections of which are now designated in the Kentucky Statutes as sections 1136 and 1136a. The title of this act was:

"An act to repeal and re-enact chapter 19, of the Acts of 1914, which is an act concerning the trial and punishment of prisoners indicted for felony or misdemeanor."

Following this title the entire act is as follows:

"Section 1. That chapter 19 of the Acts of 1914, which is now section 1130 of the Kentucky Statutes, be and the same is hereby repealed, amended and re-enacted so that same will read as follows: 'The jury by whom the offender is tried shall fix by their verdict the punishment to be inflicted within the periods and amount prescribed

by law; persons sentenced to punishment by confinement in the penitentiary shall be kept at hard labor. In cases where the punishment is a fine or imprisonment in the county jail, or both, the imprisonment shall be close confinement in the jail of the county where the trial was held, unless otherwise provided; and the prisoner shall also be confined in the jail until the costs are paid, unless otherwise provided.'

"Section 2. Any person convicted and sentenced to the penitentiary under the preceding section shall receive a credit on his sentence of not exceeding ten days in each month, the amount of credit to be determined by the Board of Prison Commissioners from the conduct of the prisoner. The Board of Penitentiary Commissioners shall prescribe rules for the control, conduct and management of the prisoners, and allow to each prisoner a credit on his or her sentence, in accordance with such rules and regulations.

"Section 3. All laws in conflict with this act are hereby repealed."

At the time the latter act was enacted, and before the act of 1914, which the latter act purports to repeal and re-enact, there was in force among the statute laws of the state a statute which is section 3801, Kentucky Statutes, and which among other things relating to the duties of the clerk of the penitentiary, provided: "He shall also keep a book in which he shall enter monthly the deportment of each prisoner, and each prisoner against whom no charge of misconduct has been sustained shall be allowed a commutation of seven days in each calendar month for good behavior, subject, however, to revision and curtailment by the commissioners for offenses against the rules of the penitentiary or the laws of the state."

The condition of the legislation upon the subject being as above shown, it is insisted by the appellants that section 2 of the act of 1916, which is designated in the Kentucky Statutes as section 1136a, is unconstitutional, because it purports to be and is an act amendatory of chapter 19, Session Acts 1914; that the last mentioned act did not in any way deal with the subject of the commutation of the sentence of a prisoner on account of good conduct, nor empower the Board of Charities and Corrections to make any rules upon the subject, or any rules for the conduct of prisoners, to which subjects the section 1136a is

devoted, and therefore the subject matter of the latter section is not germane to nor covered by the title of the act of 1916, of which section 1136a is a part; and that especially is this true when there existed at the time of the enactment of the act of 1916, a statute, 3801, *supra,* which dealt with the commutation of a sentence of imprisonment for a felony, and of which statute no mention was made in the title of the act of 1916, nor in the body of the act, and for the above reasons the title of the Act of 1916 was restricted to the branches of the general subject of the trial and punishment of persons for felonies to those branches of that subject dealt with in chapter 19 of the Acts of 1914. It was insisted that one of the rules of construction, regarding section 51 of the Constitution, is that when the title of an act purported that the act was one to amend and re-enact a specific statute that the portion of the body of such an act, which was inconsistent with another specific statute, not referred to in the title of the amendatory act, was invalid and did not work a repeal or modify, nor amend the specific statute not referred to in the title, although the amendatory act might have a title which indicated that the act dealt with a general subject.

The above contentions were ingeniously and ably insisted upon, but it should be borne in mind, that section 51, *supra,* makes no other requirements for a valid act of the legislature, with reference to the subject of the act, than that a valid act shall have but one subject, and that subject shall be expressed in the title, and this requirement applies with equal force to an amendatory act as to an original act. As to the requirements of the title to an act they are the same as to every kind of act of the legislature. The title of an act is the index to its contents, and the legislature has the power to make the title as general or as restrictive as it chooses, and whether the matter embodied in the act is germane to the subject expressed in the title, and naturally connected with it and not foreign to it, depends upon the general nature of the subject and the limits to which the title restricts it. If the title of an act expresses that the act relates to a general subject, it is notice to the members of the legislature and to the public that any provision that is naturally connected with that subject, and not foreign to it, may be found embodied in it, and thus the members of the legislature are not induced to vote for the passage of an act of which the title is a deception.

When the matter dealt with in the body of the act bears such a relation to the subject expressed in the title, the requirements of section 51, *supra,* are satisfied to the extent that it provides that the act shall have but one subject, and that expressed in the title. Commonwealth v. Starr, 160 Ky. 210; McGlone v. Womack, 129 Ky. 274; Conley v. Commonwealth, 98 Ky. 125; Williams v. Wedding, 165 Ky. 361; Ky. Live Stock Ass'n v. Hager, 120 Ky. 125; Phelps v. Covington, etc., 2 Met. 219; Johnson v. Higgins, 3 Met. 566; Howard Coal and Iron Works v. Brown, 13 Bush 681. Applying the same rule, when the title of the act purports that it is an act, which relates to the amendment of a statute, and a re-enactment of the statute as amended, the subject of the act as expressed in the title may restrict the body of the act so that nothing in it is germane to the title, except legislation upon the same subject or branch of the subject, which was dealt with in the original act, or which is naturally connected with that subject, or that branch of it, because the title would not give notice to the members of the legislature or the public that any other subject or branch of it would be dealt with in the act—in fact it would rather indicate that no other subject was considered in the act. This is the principle upon which South v. Fish, 181 Ky. 349; Commonwealth v. Moore, 187 Ky. 494, and District Board, etc. v. Bradley, etc., 188 Ky. 426, is rested. The principle is thus stated in Commonwealth v. Moore, *supra*:

" . . . that even though the title indicated that the act dealt with a general subject, yet if it further indicated that it did so, only to the extent of repealing or amending certain specified sections of the statute, the title restricted the purpose of the act to that phase or branch of the general subject treated of in the sections of the statute therein specified."

Every amendatory act, however, may not have a title so restrictive as to exclude in the body of the act, legislation, which pertains to the general subject of the act, but not to the particular branch of it with which the original act deals, and in such instances it is clear that such legislation is germane to the subject expressed in the title. It depends upon the generality of the particular title. In South v. Fish and Commonwealth v. Moore, *supra,* mention is made in the opinions, that, at the times of the enactment of the amendatory acts, the parts

of which were held invalid in those cases, other statutes then existed, which dealt with the same subjects or branch of the subjects to which the invalid portions of the amendatory acts related, and which remained unaffected, but that did not arise from the fact that such statutes were not mentioned in the title or body of the amendatory acts, but from the fact that the portion of the amendatory acts which dealt with those subjects was invalid, because the titles of the acts, in which they were contained, failed to cover them. If an amendatory act contains legislation, which is irreconcileably inconsistent with a provision of a previously existing statute, which is not mentioned in the title of the amendatory act, and the provision of the amendatory act is germane to its own title and not foreign to it, so that it is covered by the title of the act, no reason is perceptible why the provision of the amendatory act would not work a repeal of the previously existing and outstanding inconsistent statute, by implication. The provisions of section 51, *supra,* which provide that no law shall be revised, amended or the provisions thereof extended or conferred by reference to its title only, and the portion of it that is revised, amended, extended or conferred shall be re-enacted and published at length, do not relate to nor affect the requirements in reference to the title of an act.

It will be observed, that the subject of the act of 1916, as expressed in its title, is the repeal and re-enactment of chapter 19, *supra,* and the additional words "which is an act concerning the trial and punishment of persons indicted for a felony or misdemeanor," while merely a further description of the statute repealed, also, gives notice of the general character of the subject of the act repealed. A literal definition of the words of the title would restrict it to a repeal of chapter 19, *supra,* and then a simultaneous re-enactment of it, in the exact form it bore when repealed, and this would result in holding both sections of the act of 1916 invalid, because section 1 of section 1136, Kentucky Statutes, is dissimilar in form and substance to chapter 19, *supra,* although dealing with the subject therein dealt with, and section 2 of 1136a, Kentucky Statutes, contains provisions upon a subject, while a branch of the general subject of the trial and punishment of persons convicted of a felony, the particular branch with which section 1136a, *supra,* deals with was

not considered in chapter 19, *supra,* at all. Manifestly, however, the legislature did not intend to do any such vain thing as to repeal a statute and then to re-enact it in the same form and substance, simultaneously and by the same enactment. To come to such a conclusion would be to conclude an absurdity. Words cannot be interpolated into a title any more than they can into the body of the act, unless it is clear, that such words were so understood as being embraced in the title and necessarily implied. No member of the legislature could have failed to understand from the title of the act of 1916, that the statute, which was to follow had the effect to repeal chapter 19, *supra,* to revise or amend it and then to re-enact it in its revised or amended form, and that in its amended form the provisions were germane to matters dealt with in the original act. The first section of the act of 1916 expressly declares that it is to be an amendment and re-enactment of chapter 19, *supra.* This, however, while not helping the title indicates what the legislature understood the title to be. In South v. Fish, *supra,* a word was interpolated into the title as being necessarily implied. When the title of the act of 1916 is read ''an act to repeal, amend and re-enact chapter 19, Session Acts, 1914, which is an act relating to the trial and punishment of persons convicted of a felony or misdemeanor,'' all of the reasons for the constitutional provision, in reference to the subject being expressed in the title, are satisfied. The reasons for the adoption of section 51 of the Constitution have been held by the courts to be the prevention of log-rolling legislation, to protect the legislators against voting for measures, which contain provisions of which the title to an act gives no notice and to apprise the public of what is intended by the act, by the publication made of intended legislation, that an opportunity may be had to have a hearing in opposition to vicious legislation, or such as affects the interests of the public before the legislation is made. Exall v. Holland, 166 Ky. 315; Board of Trustees, etc. v. Tate, 155 Ky. 296; Smith v. Commonwealth, 175 Ky. 291; District Board of Tuberculosis Sanitarium Trustees, etc. v. Bradley, Mayor, et al., 188 Ky. 426. A very good rule to determine whether the title of an act conforms to the requirements of section 51, *supra,* is to read the contents of the act and then to observe whether the title was sufficient to meet the reasons above enumerated for the adoption of section 51.

In the instant case, the title gave notice to all of the subject of the act, and by reference to chapter 19, *supra,* it could be readily ascertained the nature of the subjects dealt with in the act, and its title will cover all subjects which were germane to the matters dealt with in the original act. We are not unmindful, that a universally accepted rule of the construction of section 51, *supra,* as well as the title of acts, is that every act will be presumed to be in accordance with the requirements of the Constitution, unless clearly violative of it, and that it is the duty of the courts to uphold the constitutionality of legislation, if it can be fairly done, and not to seek the defeat of legislation by ingenious reasoning or doubtful rhetoric. The act of 1916, considered as an amendatory act of chapter 19, *supra,* has a title sufficiently general to cover any legislation upon the same subjects or branches of the general subject of the trial and punishment of persons convicted of a felony or a misdemeanor, which is germane to any branch of the subject dealt with in chapter 19, *supra.* It will be observed, that one provision of chapter 19, *supra,* related to the manner in which a convicted felon should execute his sentence, in other words how he he should be punished. It provided that during the period of his sentence to imprisonment he should be kept at hard labor. This evidently meant that he should be kept at hard labor during the period for which he was sentenced to imprisonment. Section 1136a provides, that a felon instead of being kept at hard labor during the entire period of his sentence shall have a credit on his sentence of not exceeding ten days in each month, the amount to be credited by the board from the conduct of the prisoner, and then authorizes rules to be made by the board for the control, management and conduct of the prisoner, and to allow to him the credits in accordance with the rules. These provisions are naturally connected with the manner in which the sentence of a felon shall be executed, and in place of continuous hard labor during the entire term of his sentence, the credits for good conduct may be allowed in the discretion of the Board. Being germane to the title of the act and to a branch of the subject dealt with in the repealed act, the section is valid. It is irreconcilably inconsistent, however, with the portion of section 3801, *supra,* which allowed the felon in the execution of his sentence only seven days' credit during each month for good behavior, and made it man-

datory, if no charge of misconduct was sustained against him, and 1136a was evidently intended to be substituted for that section to the extent that their provisions are inconsistent. This necessarily works a repeal of the provisions of section 3801, *supra,* which are inconsistent with section 1136a, *supra.* Commonwealth v. Godshaw, 92 Ky. 435; Mean v. Frame, 5 Dana 535; Gorham v. Luckett, 6 B. M. 146; Robinson v. Commonwealth, 7 K. L. R. 452; Patterson v. Commonwealth, 86 Ky. 313.

(b) No charge of misconduct had been sustained against the appellee during the period of his imprisonment. The Board of Charities and Corrections, previous to the commitment of the appellee to the Reformatory, in accordance with the provisions of section 1136a, had adopted certain rules to control the allowance of credits upon the sentences of felons for good conduct, and by these rules a felon was given a credit for good conduct of seven days in each month during the first year of his term, during the second year of his term eight days in each month, and during the third and subsequent years ten days in each month, and the credits had been allowed the appellee upon his term in accordance with these rules. Instead of crediting a felon's term with the entire time by which he could have credit for good behavior during the period of his sentence, at the beginning of his term, and thereafter deducting from the total credit for misconduct as was the manner of administering the provisions of section 3801, *supra,* the appellee was allowed a credit upon his sentence for good behavior in each month, when he had earned the credit by being of good conduct for the period of the month. The appellee contended, that being at all times of good conduct he was entitled to a credit of ten days in each month, and the credit of that period for each month of his term should have been given him, as of the beginning of his term, and that the rule allowing him a credit of seven days for each month of the first year of his term, and eight days in each month for the second year of his term was arbitrary and unreasonable, and therefore unenforcible, and that allowing the credit only after it had been earned by good behavior for the period of a month was contrary to the statutes and the contemporary construction heretofore placed upon the statute by the officials of the Reformatory and Penitentiary. The court held in accordance with the contentions of appellee, and in this we are of the

opinion that the trial court was in error. Whatever may have been the rule touching the allowances of credits under section 3801, it will be observed that its terms are different from those of section 1136a. Section 3801 was mandatory in its requirement, that the felon should be allowed a credit of seven days in each month, if no charge of misconduct should be sustained against him, while 1136a provides, that the credit should not exceed ten days in each month, and left the number of days' credit for each month, a matter within the discretion of the Board of Charities and Corrections to be determined by rules to be adopted by it in its administration of the statute. The legislature evidently intended to change the law from the manner of its administration under section 3801. The allowance to a felon of a credit upon his sentence for good conduct for the maximum time to which he might have credit is not a vested right of the felon, but it is an act of grace extended to him by the legislative authority, through the administration by the Board of Charities and Corrections, to whose discretion the legislature has confided the number of days in each month the felon shall have credit upon his sentence, not exceeding ten, to be determined by rules which it has authorized the board to adopt and dependent upon the good conduct of the felon. State Board of Charities and Corrections v. Hay, 190 Ky. 147. The statute provides expressly, that the amount of credit shall be determined by the Board from the conduct of the prisoner. The rules as adopted held out an incentive to a prisoner to continue of good conduct until the end of his term and aids the discipline of the prison, and serves to inure the prisoner to a compliance with the rules of orderly life, and if his term is a long one, the longer he remains, the greater credit he will receive for good conduct, and the greater incentive he will have to observe the rules of good behavior. In the adoption of these rules which seem to be reasonable and in accordance with modern views of prison punishment, no abuse of discretion is evinced upon the part of the Board. As to when the credit should be applied, it seems that the Board has no power to grant a felon a credit upon his term, except for good conduct, and surely it could not determine whether the prisoner had been of good conduct and was entitled to a credit for good behavior for one month until the month had expired. No contemporaneous construction

by administrative officials can be allowed to defeat the plain purpose and language of a statute. Com'th v. Ross, 135 Ky. 315; Barker v. Comth, 177 Ky. 637; Green v. Smither, 178 Ky. 742; Bosworth v. Marshall, 165 Ky. 32; Green v. Gilbert, 168 Ky. 380.

The judgment is therefore reversed and remanded for proceedings not inconsistent with this opinion.