PAYNE v DEPARTMENT OF CORRECTIONS

Docket No. 207572. Submitted April 12, 2000, at Detroit. Decided September 26, 2000, at 9:00 A.M.

Roger Payne, III, brought an action in the Wayne Circuit Court against the Department of Corrections, seeking a writ of mandamus compelling the defendant, when calculating the plaintiff's prison sentence and considering parole for him, to abide by the Prison Overcrowding Emergency Powers Act (POEPA), 1980 PA 519, MCL 800.71 et seq.; MSA 18.1437(1) et seq., and a parole statute that had set the frequency of parole interviews at one every two years despite the fact that the POEPA had been repealed and the parole statute had been amended to reduce the frequency of parole interviews to every five years. The plaintiff contended that the legislative changes violated the Ex Post Facto Clause and the Due Process Clause of the United States Constitution. On cross-motions for summary disposition, the court, James J. Rashid, J., denied the plaintiff's motion and granted the defendant's motion. The plaintiff appealed by leave granted.

The Court of Appeals held:

1. The POEPA provided the Governor with discretionary authority to effectively reduce the minimum terms of prisoners through grants of early release credits whenever the Governor, at the urging of the Commission of Corrections, declared that a prison overcrowding state of emergency existed. The plaintiff's loss of opportunity for early release credits with the repeal of the POEPA does not constitute a violation of the Ex Post Facto Clause inasmuch as such loss of opportunity is the type of ambiguous and speculative disadvantage that is not prohibited by the Ex Post Facto Clause. For the same reasons, the repeal of the POEPA does not violate principles of due process.

2. Given the discretionary power of the Governor under the POEPA, the plaintiff was not entitled to an award of early release credits for the period from when the Governor stated he would no longer declare prison overcrowding states of emergency to when the POEPA was repealed.

3. The ex post facto prohibition is violated when changes to parole procedures create a sufficient risk of increasing the measure

of punishment. The decrease in the frequency of parole interviews brought about by the parole statute amendments at issue in this case did not create a significant risk of increased punishment, given that the amendments now allow the Parole Board to grant parole interviews of its own volition and to grant prisoners parole without an interview.

Affirmed.

1. CONSTITUTIONAL LAW — EX POST FACTO LAWS.

The Ex Post Facto Clause of the United States Constitution bars enactments that, by retrospective operation, increase the punishment for a crime after its commission (US Const, art 1, § 10, cl 1).

2. CONSTITUTIONAL LAW — EX POST FACTO LAWS — PRISON OVERCROWDING EMERGENCY POWERS ACT.

A prisoner's loss of the opportunity for further early release credits under the Prison Overcrowding Emergency Powers Act upon the repeal of the act is not the type of disadvantage prohibited by the Ex Post Facto Clause of the United States Constitution given the speculative nature of such credits, which were awarded at the discretion of the Governor (US Const, art 1, § 10, cl 1; 1980 PA 519, MCL 800.71 *et seq.*; MSA 28.1437(1) *et seq.*, repealed by 1987 PA 101).

3. CONSTITUTIONAL LAW — EX POST FACTO LAWS — PAROLE.

The ex post facto prohibition of the United States Constitution is violated when changes to parole procedures create a sufficient risk of increased punishment (US Const, art 1, § 10, cl 1).

Roger Payne, III, in propria persona.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Chester S. Sugierski, Jr.*, Assistant Attorney General, for the defendant.

Before: KELLY, P.J., and HOLBROOK, JR., and GRIFFIN, JJ.

PER CURIAM. Plaintiff appeals by leave granted from an order of the circuit court granting summary disposition to defendant and denying summary disposition to plaintiff. We affirm.

On January 7, 1983, plaintiff was sentenced to twenty-five to fifty years' imprisonment for his conviction of armed robbery, MCL 750.529; MSA 28.797, and to two years' imprisonment for his conviction of possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). At the time of the offense and conviction, the Prison Overcrowding Emergency Powers Act (hereinafter the POEPA), MCL 800.71 *et seq.*; MSA 28.1437(1) *et seq.*, was in effect. Pursuant to the POEPA, between the time plaintiff was sentenced and December 1984, he accumulated 540 days' credit toward his minimum sentence. The POEPA was repealed in 1987. 1987 PA 101.

In 1997, plaintiff filed a complaint for a writ of mandamus in the circuit court, arguing that the repeal of the POEPA violated the Ex Post Facto Clause of the United States Constitution.[1] Additionally, plaintiff argued that amendments made to the parole statute in 1992,[2] which reduced the frequency of parole interviews from two years to five years, also violated the Ex Post Facto Clause. On appeal, plaintiff reasserts these claims, and further argues that both legislative actions violated the Due Process Clause of the United States Constitution.[3]

The POEPA was enacted by the Legislature in response to a consistent overcrowding problem that existed in the state prison system. *Oakland Co Prosecuting Attorney v Dep't of Corrections*, 411 Mich

---

[1] US Const, art 1, § 10, cl 1. Plaintiff's argument is limited to the Ex Post Facto Clause of the United States Constitution.

[2] 1992 PA 181, MCL 791.234(4)(a); MSA 28.2304(4)(a), now MCL 791.234(6)(a); MSA 28.2304(6)(a).

[3] US Const, Am XIV. Plaintiff's argument is limited to the Due Process Clause of the United States Constitution.

183, 186-187; 305 NW2d 515 (1981). The POEPA authorized an emergency procedure to reduce by ninety days the minimum terms of those prisoners having established minimum terms upon the declaration by the Governor that a prison overcrowding state of emergency existed. MCL 800.74; MSA 28.1437(4). If the prison population was not reduced to a designated level within a fixed period following such a declaration, further reductions were authorized. MCL 800.75; MSA 28.1437(5).

Plaintiff first claims that the repeal of the POEPA violates the Ex Post Facto Clause because it lengthened his term of imprisonment, thereby inflicting a harsher punishment than existed before the repeal. See *Calder v Bull*, 1 Dall 386, 390; 1 L Ed 648 (1798); *Riley v Parole Bd*, 216 Mich App 242; 548 NW2d 686 (1996). We disagree.

A prohibited ex post facto law is one that is "retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v Graham*, 450 US 24, 29; 101 S Ct 960; 67 L Ed 2d 17 (1981). "One function of the Ex Post Facto Clause is to bar enactments which, by retrospective operation, increase the punishment for a crime after its commission." *Garner v Jones*, 529 US 244; 120 S Ct 1362, 1367; 146 L Ed 2d 236 (2000). Clearly, plaintiff is disadvantaged by the repeal of the POEPA. What we must decide is whether the retroactive application of the repeal of the POEPA disadvantages plaintiff by actually increasing his criminal punishment in violation of the Ex Post Facto Clause. *California Dep't of Corrections v Morales*, 514 US 499, 506-507 & n 3; 115 S Ct 1597; 131 L Ed 2d 588 (1995). We hold that it does not.

Plaintiff's argument relies in large part on *Lynce v Mathis*, 519 US 433; 117 S Ct 891; 137 L Ed 2d 63 (1997), and *Weaver*. We find this reliance to be misplaced. In *Lynce*, the Supreme Court held that a statute, which retroactively canceled early release credits awarded to prisoners because of prison overcrowding, violated the ex post facto prohibition. *Id.* at 449. In the case at hand, the repeal of the POEPA did not similarly revoke the 540 days accumulated by plaintiff under the POEPA.

In *Weaver*, the Supreme Court held that a statute, which reduced the number of automatic good-time credits a prisoner could receive, also violated the ex post facto prohibition. *Weaver*, *supra* at 35-36. In the case at hand, the award of emergency credits was not similarly automatic. A significant feature of the POEPA was the discretionary authority given the Governor. Under § 3 of the POEPA, the Commission of Corrections was told to request that the Governor declare a state of emergency when the established population level was reached. MCL 800.73; MSA 28.1437(3). The commission was also instructed to certify "that all administrative actions consistent with the applicable state laws and the rules promulgated under those laws have been exhausted in an attempt to reduce the prison population" to an identified level. *Id.* Section 4 invested the Governor with the authority to find that the commission had acted in error in making such a request. MCL 800.74; MSA 28.1437(4). This discretionary authority means that what plaintiff lost was the opportunity to be awarded early release credits if the Governor determined that certain conditions, not under plaintiff's control, came into being.

We hold that the loss of this opportunity by the repeal of the POEPA does not violate the Ex Post Facto Clause. The *Morales* Court noted that "the focus of the ex post facto inquiry is not whether a legislative change produces some, ambiguous sort of 'disadvantage,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." *Morales, supra* at 506-507 & n 3. Plaintiff's lost opportunity to have his prison term reduced if (1) the identified prison population criteria had been met, (2) the Commission of Corrections had exhausted all other measures in an attempt to reduce the population, and (3) the Governor decided that the commission had not acted in error, is the type of ambiguous and speculative disadvantage that is not prohibited by the Ex Post Facto Clause. *Id.* at 514. See also *Garner, supra,* 120 S Ct 1370. For these same reasons, we hold that the repeal of the POEPA does not violate the principles of due process. See *Bouie v City of Columbia,* 378 US 347, 352-354; 84 S Ct 1697; 12 L Ed 2d 894 (1964).

Plaintiff also argues that he should be awarded early release credit for the years since the award of overcrowding credits was discontinued. Because we have held that the repeal of the POEPA did not violate the ex post facto prohibition, the range of this argument is limited to the period between December 14, 1984, when Governor Blanchard refused to declare an overcrowding emergency,[4] through January 1, 1988,

---

[4] In response to a request by the Department of Corrections that Governor Blanchard declare an emergency in the female prison system, the Governor informed the department that he did "not intend to declare a prison overcrowding emergency now or in the near future." Letter from James J. Blanchard, Governor of the State of Michigan, to Gwen Andrew, Ph.D., Michigan Department of Corrections. (December 14, 1984).

the effective date for the repeal of the POEPA. As for this period, we conclude that given the discretion granted to the Governor under the POEPA, plaintiff's argument is without merit.

We also reject plaintiff's argument regarding the 1992 amendments of the parole statute. Plaintiff's argument is that the increase in the time between mandatory parole eligibility interviews from two to five years is unconstitutional. As the *Garner* Court observed, "The States must have due flexibility in formulating parole procedures and addressing problems associated with confinement and release." *Garner*, *supra*, 120 S Ct 1368. It is only when changes to those procedures create "a sufficient risk of increasing the measure of punishment attached to covered crimes," that the ex post facto prohibition is violated. *Morales*, *supra* at 509. While the change in the frequency does disadvantage plaintiff, we note that the law is significantly qualified: "The 1992 amendments do not change the standard for parole, but allow prisoners ample opportunity to petition the Parole Board for interviews. Further, the 1992 amendments allow the Parole Board to grant parole interviews of its own volition, and to grant prisoners parole without an interview." *Shabazz v Gabry*, 123 F3d 909, 914 (CA 6, 1997). Accordingly, we conclude that the decrease in frequency of mandatory interviews does not create a "significant risk" of increased punishment. *Garner*, *supra*, 120 S Ct 1369-1370; *Morales*, *supra* at 514.

Affirmed.