Shirley MARTIN, Appellant,

v.

Larry CHANDLER, Warden, Luther Luckett Correctional Complex, Appellee.

No. 2001–SC–0473–DG.

Supreme Court of Kentucky.

Dec. 18, 2003.

John Palombi, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Brenn Oliver Combs, Department of Corrections, Office of General Counsel, Stephen P. Durham, Department of Corrections, Office of General Counsel, Frankfort, Counsel for Appellee.

KELLER, Justice.

## I. ISSUE

In 1995, Appellant was convicted of Incest and was sentenced to a ten (10) year term of imprisonment. Because Appellant was eligible to receive additional "good time credit" against this sentence under KRS 197.045(1) & (3), the Kentucky Department of Corrections ("KDOC") calculated Appellant's minimum expiration date as March 19, 2001. However, a 1994 indictment that charged Appellant with additional sexual offenses remained pending, and in 1999, Appellant pled guilty under that indictment to two (2) counts each of First–Degree Sodomy and Second–Degree Rape and received four (4) concurrent ten (10) year prison sentences that the trial court also ordered to run concurrently with the ten (10) year sentence that Appellant was already serving for his 1995 Incest conviction. Pursuant to KRS 197.045(4), which the General Assembly enacted in 1998, Appellant could not receive KRS 197.045 good time credits against the sentences for his 1999 convictions until he successfully completed the Sex Offender Treatment Program ("SOTP"). Appellant has not met this requirement. Therefore, the KDOC performed its sentence calculations as to Appellant's 1999 convictions without a good time credit allowance and thus reflected only a maximum expiration date of June 19, 2004. After he reached the minimum expiration date of the sentence for his 1995 Incest conviction, Appellant filed a petition for a writ of habeas corpus in which he alleged that the KDOC had violated the Ex Post Facto clauses of the federal and state constitutions by calculating his expiration date in accordance with KRS 197.045(4). The trial court denied the petition and, on appeal, the Court of Appeals summarily affirmed.[1] Appellant now appeals to this Court as a matter-of-right.

---

1. In addition to the substantive issue raised in this appeal, Appellant argues that the Court of Appeals violated CR 76.28(1)(b), which provides that "[o]pinions and orders finally de-

Did the KDOC's application of KRS 197.045(4) to the sentences Appellant received for his 1999 convictions violate Appellant's constitutional protections against ex post facto laws? Because Appellant has no entitlement to the discretionary KRS 197.045(1) non-educational good time and KRS 197.045(3) meritorious good time credits, KRS 197.045(4)'s requirement that sex offenders successfully complete SOTP before they are eligible to earn such good time credits does not "increase the punishment for criminal acts."[2] Accordingly the KDOC did not violate federal or state ex post facto protections when it calculated the expiration date for Appellant's 1999 convictions in accordance with KRS 197.045(4).

## II. FACTUAL BACKGROUND

The most direct way to review the factual background to the issues presented in this case is to examine the KDOC's calculations as to Appellant's sentences, which are reflected on Appellant's KDOC Resident Record Card:

| SENTENCE CALCULATIONS[3] | YR | MO | DY |
| --- | --- | --- | --- |
| 1. Total Time to Serve | 0010 | 00 | 00 |
| 2. Date Sentenced/Received | 1995 | 12 | 19 |
| 3. Normal Maximum Expiration Date | 2005 | 12 | 19 |
| 4. Credit for Jail Time | 0001 | 06 | 00 |
| 5. Adjusted Max Expiration Date | 2004 | 06 | 19 |
| 6. Good Time Allowance | 0002 | 06 | 00 |
| 7. Minimum Expiration Date | 2001 | 12 | 19 |
| 8. Meritorious Good Time Award | 0000 | 05 | 00 |
| 9. New Minimum Exp. Date | 2001 | 07 | 19 |
| 10. Meritorious Good Time Award | 0000 | 02 | 00 |
| 11. New Minimum Exp. Date | 2001 | 05 | 19 |
| 12. Meritorious Good Time Award | 0000 | 02 | 00 |
| 13. New Minimum Exp. Date | 2001 | 03 | 19 |
| | | | |
| 14. New Tot Time to Serve | 0010 | 00 | 00 |
| 15. Date Sentenced/Received | 1995 | 12 | 19 |
| 16. Normal Maximum Expiration Date | 2005 | 12 | 19 |
| 17. Credit for Jail Time | 0001 | 06 | 00 |
| 18. Adjusted Max Expiration Date | 2004 | 06 | 19 |

Entries 1–13 reflect the KDOC's sentencing calculations for Appellant's first ten (10) year sentence—the one imposed on December 19, 1995 for the crime of Incest under Adair Circuit Court Indict-

---

ciding a case on the merits shall include an explanation of the legal reasoning underlying the decision," when it failed to set out its reasoning in its order affirming the trial court's denial of habeas relief. We do not separately address this allegation of error because we conclude that any defect in the Court of Appeals's order was rendered harmless by this Court's decision to grant discretionary review and review Appellant's claim on its merits. *See* RCr 9.24

**2.** *Collins v. Youngblood*, 497 U.S. 37, 43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30, 39 (1990)

("The *Beazell* [*v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925) ] formulation is faithful to our best knowledge of the original understanding of the Ex Post Facto Clause: Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts.").

**3.** We have numbered the entries on Appellant's Resident Record Card for easy reference; they are unnumbered on the original. The space between entries 13 and 14 appears in the original document.

ment No. 95–CR–061. After adding the ten (10) year sentence to Appellant's institutional start date and then subtracting the jail custody credit ordered in the trial court's final judgment,[4] entry 5 represents Appellant's maximum expiration date, *i.e.,* the date when he would have served the entirety of his ten (10) year sentence.

Entry 6, which reflects a "good time allowance" of two (2) years and six (6) months (or thirty (30) months) requires further explanation. The KDOC subtracted this "good time allowance" from Entry 5, Appellant's maximum expiration date, to determine Appellant's minimum expiration date, *i.e.,* the date when Appellant would be released from custody *if* he remained continuously incarcerated until that date and *if, and only if,* he "was credited with the full amount of statutory good time credit at that time."[5] Although Appellant suggests otherwise, the thirty (30) month "good time allowance" reflected on this sentence does not reflect an actual credit against this sentence that he had already earned or accumulated as of January 1999 when the trial court imposed the second, concurrent ten (10) year sentence.[6] After all, KRS 197.045(1) allows the KDOC to credit inmates with a good time credit "of not exceeding ten (10) days for each month served," and, when Appellant filed this habeas action in March 2001, he had served just over sixty-three (63) months (including his jail custody credit).[7] Accordingly, at that time, Appellant could have received *no more than* six hundred and thirty (630) days (or twenty-one (21) months) of KRS 197.045(1) non-educational good time credit, and it would therefore have been impossible for him to have earned thirty (30) months of KRS 197.045(1) non-educational good time credit as of that date. Appellant's suggestion that the "good time allowance" constitutes an "up-front" credit for the maximum amount of KRS 197.045(1) non-educational good time erroneously assumes that every well-behaved inmate is entitled to the statutory maximum of ten (10) days per month of such credit. However, unlike the KRS 197.045(1) educational good time credit, which is mandatory[8] (but not implicated in this case), the KRS 197.045(1) non-educational good time credit is akin to the KRS 197.045(3) meritorious good time credit[9] in that both its availability and

---

4. *See* KRS 532.120(3) ("Time spent in custody prior to the commencement of a sentence as a result of the charge that culminated in the sentence shall be credited by the court imposing sentence toward service of the maximum term of imprisonment.").

5. *Kassulke v. Briscoe–Wade,* Ky., 105 S.W.3d 403, 404 (2003) (footnote omitted and emphasis added).

6. As explained above, this "sentence" was actually four (4) concurrent ten (10) year sentences. However, because those concurrent sentences function as a single ten (10) year sentence, for the sake of clarity, we will refer to them as a single sentence.

7. *See* KRS 532.120(3) ("If the sentence is to an indeterminate term of imprisonment, the time spent in custody prior to the commencement of the sentence shall be considered for all purposes as time served in prison."); *Polsgrove v. Kentucky Bureau of Corrections,* Ky., 559 S.W.2d 736 (1977).

8. KRS 197.045(1) ("In addition, the department *shall provide* an educational good time credit of sixty (60) days to any prisoner who successfully receives a graduate equivalency diploma or a high school diploma, a two (2) or four (4) year college degree, or a two (2) year or four (4) year certification in applied sciences, or who receives a technical education diploma as provided and defined by the department[.]" (emphasis added)).

9. *See* KRS 197.045(3) ("An inmate may, *at the discretion of the commissioner,* be allowed a deduction from a sentence not to exceed five (5) days per month for performing exceptionally meritorious service or performing duties of outstanding importance in connection with

amount is a matter for the KDOC's discretion.[10] As such, Appellant had no vested right nor reasonable entitlement to *any* KRS 197.045(1) non-educational good time credit. Because it is not possible to make a prospective determination of how an inmate will conduct himself or herself during a term of imprisonment,[11] the thirty (30) month "good time allowance" reflected on Appellant's KDOC Resident Record Card

is simply the maximum amount of KRS 197.045(1) non-educational good time that Appellant *could possibly receive.*[12] Of course, even actually-awarded KRS 197.045(1) non-educational good time is subject to the KDOC's ability to "forfeit any good time previously earned by the prisoner or deny the prisoner the right to earn good time in any amount."[13] And, Appellant's "good time allowance" in entry

institutional operations and programs." (emphasis added)); *Anderson v. Parker,* Ky.App., 964 S.W.2d 809, 811 (1998).

10. KRS 197.045(1) provides that "[a]ny person convicted and sentenced to a state penal institution *may* receive a credit on his sentence of not exceeding ten (10) days for each month served, except as provided in this section, to be determined by the department from the conduct of the prisoner." (Emphasis added). Both our predecessor Court and the Court of Appeals have recognized that KRS 197.045(1)'s "may" language prevents any claim of entitlement to statutory good time. *See Fowler v. Black,* Ky., 364 S.W.2d 164, 164–5 (1963) ("[T]he privilege granted by [KRS 197.045] is not a vested right .... When Fowler claims the benefit provided by the statute he necessarily is bound by the condition which reserves to the Department the right to determine whether he was entitled to receive such benefit."); *Hobbs v. Commonwealth,* Ky.App., 690 S.W.2d 771, 772 (1985) ("Appellant also relies on KRS 197.045(1) as grounds for 'good time' reduction as a matter of right. However a reading of that section clearly shows the contrary."). And, over eighty years ago, when the predecessor to the current KRS 197.045(1) provided that a prisoner *"shall* receive a credit on his sentence of not exceeding ten days in each month, the amount of credit to be determined by the Board of Prison Commissioner from the conduct of the prisoner," our predecessor identified it as a legislative change from an earlier, mandatory good time statute because of the discretion to determine the number of days of credit an inmate receives. *State Board of Charities and Corrections v. Combs,* 193 Ky. 548, 237 S.W. 32, 37 (1922). More recently, in opinions addressing the admissibility during Truth–in–Sentencing Proceedings of evidence relating to possible good time credit against a defendant's sentence, this

Court has characterized good time credit as "speculative," *Commonwealth v. Higgs,* Ky., 59 S.W.3d 886, 893 (2001), and has analytically juxtaposed evidence as to "potential" good time credit with evidence concerning parole eligibility because "[n]either constitutes a guarantee of a reduction of the sentence; but both potentially affect the actual duration of a period of imprisonment ...." *Cornelison v. Commonwealth,* Ky., 990 S.W.2d 609, 611 (1999).

11. *See State Board of Charities and Corrections v. Combs,* 237 S.W. at 37.

12. *See* Brenn O. Combs, *Understanding Sentence Calculation and Application,* 25 (No. 5) THE ADVOCATE 30, 31 (Sept. 2003) ("Although statutory good time is only 'earned' when the month has been served, as a practical matter an allocation of the statutory good time credit applicable to the inmate's sentence is placed on his Resident Record Card in advance.") As a prison sentence is reduced from the front end by service and from the back end by statutory good time, the two (2) ends will meet somewhere in the middle. Thus, an inmate with a ten (10) year (or one hundred and twenty (120) month) sentence who receives a maximum KRS 197.045(1) statutory good time award of ten (10) days for each month will serve seven (7) years and six (6) months (or ninety (90) months) because, after serving ninety (90) months and receiving thirty (30) months of 197.045(1) statutory good time credit [90 months of service × 10 days of KRS 197.045(1) statutory good time per month ≈ 900 days or 30 months], he or she would have served out the sentence by reaching the minimum expiration date. *Id.* at 32.

13. KRS 197.045(1). *See also* Kentucky Corrections Policies and Procedures (CCP) 15.2.

6 is properly understood not as an actual credit on his sentence but rather as a maximum-amount "place-holder," which, if subtracted from the maximum expiration date, allows the KDOC to calculate Appellant's *minimum* expiration date.

Entries 8, 10, and 12 reflect a total of nine (9) months of KRS 197.045(3) meritorious good time awards, which further reduce Appellant's minimum expiration date for his 1995 Incest conviction. Thus, in a hypothetical world where Appellant did not receive an additional sentence for sexual offenses in January 1999, Appellant would have been released from prison on March 19, 2001—assuming of course that, at that time, the KDOC had credited him with the maximum amount of KRS 197.045(1) non-educational good time credit.

However, after Appellant's January 1999 guilty plea to two (2) counts of First–Degree Sodomy and two (2) counts of Second–Degree Rape under Adair Circuit Court Indictment No. 94–CR–00048, which resulted in four (4) ten (10) year sentences to run concurrently with each other and with the ten (10) year sentence Appellant received under the other indictment, the reality of Appellant's situation diverged sharply from the hypothetical world described above. Entries 14–18 reflect the KDOC's sentence calculations for that second sentence, which, unlike the first one, had a post-July 15, 1998 conviction date and was thus subject to KRS 197.045(4). Entry 14 simply observes that the new sentence was for a ten (10) year term of imprisonment. In accordance with KRS 197.035,[14] entry 15 gives effect to the trial court's order for concurrent sentences by using the same "Date Sentenced/Received" that was used in entry 2 for the sentence calculations made in connection with Appellant's first sentence. Similarly, entries 16–18 mirror entries 3–5 because they were calculated using the same dates used in the earlier calculation, and Appellant received the same jail custody credit against his second sentence that he received against his first sentence.

The important difference between the sentence calculations for Appellant's two (2) sentences is, of course, that the entries for the second sentence stop at entry 18— an adjusted maximum expiration date of June 19, 2004—because KRS 197.045(4) does not allow Appellant, a person convicted of a sex offense after July 15, 1998 who has not successfully completed SOTP, to receive good time credit on this sentence:

*Until successful completion of the sex offender treatment program, a sex offender may earn good time. However, the good time shall not be credited to the sex offender's sentence.* Upon the successful completion of the sex offender treatment program, as determined by the program director, the offender shall be eligible for all good time earned but not otherwise forfeited under administrative regulations promulgated by the Department of Corrections. After successful completion of the sex offender treatment program, a sex offender may continue to earn good time in the manner provided by administrative regulations promulgated by the Department of Corrections. *Any sex offender, defined*

14. KRS 197.035 provides:
   (1) A sentence, on conviction of a felony, imposed upon a confined prisoner for a crime committed prior to the date of his instant confinement, if designated to be served consecutively, shall be added to the sentence or sentences being served.

   (2) If the additional sentence is designated to be served concurrently, or the commitment is silent, he shall be considered as having started to serve said sentence on the day he was committed on the first sentence.

*in KRS 197.410, who has not successfully completed the sex offender treatment program as determined by the program director shall not be entitled to the benefit of any credit on his sentence. A sex offender who does not complete the sex offender treatment program for any reason shall serve his entire sentence without benefit of good time,* parole or other form of early release. The provisions of this section shall not apply to any sex offender convicted before July 15, 1998, or to any mentally retarded sex offender.[15]

And, under KRS 532.120,[16] Appellant will not be released from prison until he satisfies this second sentence. Although the subsequently-imposed concurrent sentence is also for a maximum term of ten (10) years, it "has the longest unexpired term to run" because, unlike the earlier sentence on which Appellant received good time credits, unless Appellant successfully completes SOTP, KRS 197.045(4) unequivocally provides that he "shall serve his entire [second] sentence without benefit of good time, parole or other form of early release."[17] Thus, unless and until Appellant completes SOTP, the only end in sight for him is his maximum expiration date of June 16, 2004. The issue presented in this case is whether this application of KRS 197.045(4) constitutes an ex post facto violation.

## III. ANALYSIS

The United States Constitution prohibits the states from "pass[ing] ... any ex post facto law,"[18] and the Kentucky Constitution similarly states that "[n]o ex post facto law ... shall be enacted."[19]

Although the Latin phrase 'ex post facto' literally encompasses any law passed 'after the fact' ... '[i]t is settled ... that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto."[20]

In *Weaver v. Graham,*[21] the United States Supreme Court held that a retrospective change in the number of automatic "gain-time" credits provided for Florida inmates violated the Ex Post Facto Clause.[22] The Court explained that the United States Constitution's ex post facto prohibition was designed "to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until

---

**15.** KRS 197.045(4) (emphasis added).

**16.** KRS 532.120(1)(a) provides:
  An indeterminate sentence of imprisonment commences when the prisoner is received in an institution under the jurisdiction of the Department of Corrections. When a person is under more than one (1) indeterminate sentence, the sentences should be calculated as follows:
  (a) If the sentences run concurrently, the maximum terms merge in and are satisfied by discharge of the term which has the longest unexpired time to run. (Emphasis added).

**17.** KRS 197.045(4).

**18.** U.S. CONST. art I, § 10, cl. 1. *See also* U.S. CONST. art I, § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed.").

**19.** KY. CONST. § 19(1).

**20.** *Collins v. Youngblood,* 497 U.S. at 41–2, 110 S.Ct. at 2718–9, 111 L.Ed.2d at 38–39 (*quoting Beazell v. Ohio* ).

**21.** 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981).

**22.** *Id.*

explicitly changed." [23]  Thus, "[c]ritical to relief under the Ex Post Facto Clause is ... the lack of fair notice ... when the legislature increases punishment beyond what was prescribed when the crime was consummated." [24]  In reliance upon dicta found in *Weaver v. Graham,* this inquiry has, at times, been articulated in terms of whether an offender has been somehow "disadvantaged" by a change in the law after the crime was consummated. The United States Supreme Court, however, has subsequently identified the "disadvantaged" language as dicta and has framed the appropriate inquiry as whether a retrospective change results in increased punishment:

> Our opinion[ ] in ... *Weaver* ... suggested that enhancements to the measure of criminal punishment fall within the *ex post facto* prohibition because they operate to the "disadvantage" of covered offenders. *See ... Weaver,* 450 U.S., at 29, 101 S.Ct. 960 .... But that language was unnecessary to the result in [that case] and is inconsistent with the framework developed in *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990). After *Collins,* the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," ... but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable. [25]

Kentucky appellate courts have, on a number of occasions, considered ex post facto challenges to the General Assembly's sex offender legislation, and, in so doing,

have properly focused upon whether retrospective legislation has increased the punishment for an offense. In *Garland v. Commonwealth,* [26] the Court of Appeals held that KRS 439.340(11), which requires a sex offender to complete the Sex Offender Treatment Program ("SOTP") before he or she may be eligible for parole, was not an unconstitutional ex post facto law because it does not affect the length of an inmate's sentence:

> The appellant argues [KRS 439.340(11)] is an improper enhancement of his sentence. We disagree. The appellant misunderstands the nature of parole. The Supreme Court long ago established that parole is not a right but a privilege. Furthermore, "[g]rant of parole is not a right but a matter of grace or gift to persons deemed eligible ...." Thus, the appellant still faces a maximum five-year sentence; no more and no less. When he becomes eligible for parole is largely irrelevant. Although the appellant complains he would be eligible for parole in just one year were it not for the treatment program, he fails to realize that he does not have to be granted parole at all. Finding that relevant criteria have been met does not require the parole board to release an inmate prior to the expiration of sentence; nothing in the parole statutes or regulations mandates the granting of parole or diminishes the discretionary nature of the Parole Board's authority. Clearly, *the appellant was ordered to serve five years, and the condition precedent to parole (attending the Sexual Offender Treatment Program) does not affect the underlying*

**23.** *Weaver v. Graham,* 450 U.S. at 28–29, 101 S.Ct. at 964, 67 L.Ed.2d at 23.

**24.** *Id.,* 450 U.S. at 30, 101 S.Ct. at 965, 67 L.Ed.2d at 24.

**25.** *California Department of Corrections v. Morales,* 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 1602 n. 3, 131 L.Ed.2d 588, 595 n. 3 (1995).

**26.** Ky.App., 997 S.W.2d 487 (1999).

*sentence* and is proper. *The sentence is not enhanced in any way,* and the appellant's argument must fail.[27]

In *Purvis v. Commonwealth*,[28] however, this Court examined KRS 532.043, which provides that persons convicted after July 15, 1998 of specified sexual offenses "shall be sentenced to a [three (3) year] period of conditional release following release,"[29] and found it unconstitutional. Although the *Purvis* opinion cited *Weaver v. Graham*'s "disadvantaged" dicta,[30] our ex post facto analysis correctly focused upon the fact that KRS 532.043 purports to extend a sex offender's possible maximum sentence length:

> KRS 532.043 must also disadvantage Appellant in order for it to be declared an unconstitutional *ex post facto* law. The statute provides for the possibility of an additional three years imprisonment if Appellant violates the post-release terms imposed by the Department of Corrections, which include the completion of a sex offender program as ordered in the trial court's final judgment. *Thus, Appellant is subject to the possibility of serving an additional three years imprisonment beyond the maximum sentence to which he was*

subject *when the offenses were committed.* This result disadvantages Appellant.

> ... The case at bar differs from *Garland* in that it deals with a post-release condition rather than a condition of parole. Whereas parole "is not a right but a privilege," absolute liberty upon expiration of a criminal sentence is a right that, if circumscribed, would be a certain disadvantage. In other words, *KRS 532.043 disadvantages Appellant by extending the possible maximum length of the sentence by three years.*[31]

Later, in both *Hyatt v. Commonwealth*[32] and *Martinez v. Commonwealth*,[33] this Court addressed ex post facto challenges to Kentucky's Sex Offender Registration and Notification Provisions. Although we again cited the *Weaver v. Graham* dicta,[34] we recognized in both cases that "ex post facto laws must relate to a very real and direct effect on the actual time the prisoner remains behind bars which could include an increase in punishment"[35] and concluded that "[a]lthough the registration act is retroactive, there is no increase in punishment so as to invoke the ex post facto standard."[36]

---

**27.** *Id.* at 489 (citations omitted and emphasis added).

**28.** Ky., 14 S.W.3d 21 (2000).

**29.** KRS 532.043(1).

**30.** *Purvis v. Commonwealth,* 14 S.W.3d at 23 n. 5.

**31.** *Id.* at 24 (footnote omitted and emphasis added). *See also Lozier v. Commonwealth,* Ky.App., 32 S.W.3d 511, 514 (2000) ("[U]nder KRS 532.043, Lozier is subject to the possibility of serving three additional years beyond the maximum five-year sentence to which she was subject when she committed the crime of third-degree sodomy.").

**32.** Ky., 72 S.W.3d 566 (2002), *cert. denied,* 538 U.S. 909, 123 S.Ct. 1481, 155 L.Ed.2d 230 (2003).

**33.** Ky., 72 S.W.3d 581 (2002).

**34.** *Hyatt v. Commonwealth,* 72 S.W.3d at 571; *Martinez v. Commonwealth,* 72 S.W.3d at 584.

**35.** *Hyatt v. Commonwealth,* 72 S.W.3d at 571. *See also Martinez v. Commonwealth,* 72 S.W.3d at 584 ("[E]x post facto laws must relate to a real and direct effect on the actual time the prisoner remained behind bars.").

**36.** *Martinez v. Commonwealth,* 72 S.W.3d at 584. *See also Hyatt v. Commonwealth,* 72 S.W.3d at 581 ("Registration and Notification Statutes ... do not amount to punishment or

■ The authority most germane to the issue now before the Court, however, is *Lozier v. Commonwealth*,[37] in which the Court of Appeals addressed the constitutionality of KRS 197.045(4), the same enactment at issue here. *Lozier* referenced the *Weaver v. Graham* dicta,[38] but recognized the proper context of the "disadvantage" language by quoting *Weaver v. Graham* for the proposition that "the ex post facto prohibition ... forbids the imposition of punishment more severe than the punishment assigned by law when the act to be punished occurred."[39] The *Lozier* Court correctly held that KRS 197.045(4) did "not operate as an ex post facto law as applied to the appellant"[40] because it did not increase Lozier's sentence:

> [A]pplication of KRS 197.045(4) does not impose any additional punishment upon Lozier. A person convicted and sentenced to a state penal institution may receive credit on his or her sentence for good behavior or for other meritorious conduct. Since Lozier was convicted and sentenced after the effective date of the statute, it does not deprive her of any previously earned credits. In addition, KRS 197.045(4) does not deprive Lozier of the opportunity to earn good time credit and to qualify for early parole. Rather, KRS 197.045 merely defers the effective date of any good time credit which Lozier may earn in prison until she has successfully completed a sex offender treatment program. Once she completes the program, her accrued good time will be credited against her sentence. Consequently, we find no indication that Lozier will be disadvantaged by the application of KRS 197.045(4).[41]

Appellant argues that KRS 197.045(4) has been applied as an ex post facto law in his case and attempts to distinguish *Lozier* by arguing that the KDOC's sentence calculations for his second sentence "deprived" him of previously earned good time credits. However, the premise of Appellant's argument is invalid because the sentence calculation for Appellant's first ten (10) year sentence was unaffected by the KDOC's application of KRS 194.045(4) to his concurrent ten (10) year sentence under the other indictment. Accordingly, the KRS 197.045(3) meritorious good time credits reflected in entries 8, 10, and 12 and any KRS 197.045(1) non-educational good time credits that Appellant actually earned were, are, and, unless forfeited, always will be credited *against the first sentence*. Further, it is important to note that the KDOC has not withdrawn any good time credits that it had previously credited towards *Appellant's second sentence*.[42] Instead, the KDOC acted in accordance with the plain terms of KRS 197.045(4), which instructs it to deny any good time credit on Appellant's second sentence until Appellant successfully completes SOTP.

---

increased punishment."); *Id.* at 573 ("The Act in question does not impose any additional punishment on Hyatt, and are not ex post facto laws under either the United States Constitution or the Kentucky Constitution.").

**37.** 32 S.W.3d 511 (2000).

**38.** *Id.* at 514.

**39.** *Id.* (quoting *Weaver v. Graham*, 450 U.S. at 30, 101 S.Ct. at 965, 67 L.Ed.2d at 24 (1981)).

**40.** *Id.* at 512.

**41.** *Id.* at 514.

**42.** *Compare Lynce v. Mathis*, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (finding an ex post facto violation where Florida rearrested an inmate and returned him to custody after retroactively canceling "provisional credits" that had been credited towards the inmate's sentence and resulted in his release from custody).

As such, Appellant's argument can be distilled to a couple of assertions: first, that Appellant was entitled to receive as a credit on his second sentence the thirty (30) months of KRS 197.045(1) non-educational good time and nine (9) months of KRS 197.045(3) meritorious good time credited on his earlier sentence; and second, that to the extent that KRS 197.045(4) directs a different result, it is an ex post facto law because it "disadvantages" him. We observe that Appellant cites no statute, regulation, or precedent to support his claim that any previously earned good time credit from the earlier sentence is equally applicable to the subsequently-imposed concurrent sentence, and we have found none in our own research. Although KRS 532.120(1)(a) states that the *maximum* terms of concurrent indeterminate sentences merge,[43] no provision mandates that the *minimum* terms merge. And, although KRS 197.032(2) directs the KDOC to treat a sentence ordered to run concurrently with a prior sentence as having the same institutional start date as the prior sentence, in doing so it simply recognizes the fundamental premise of concurrency, *i.e.,* "a second judgment which provides that its sentence shall run concurrently accords the convicted defendant the right to have *the time served* on the first sentence credited against the second sentence."[44] Appellant's assertion that "credits on one sentence apply equally to the other sentence" is flatly contradicted by both KRS 197.045(4) and KRS 439.3401(4), which manifestly demonstrate the General Assembly's intent that certain classes of offenses—i.e., sex offenses for which the defendant was convicted after July 15, 1998 and violent offenses committed after July 15, 1998—play by different rules with respect to good time credits and thus will not have the same minimum expiration date as a concurrent sentence for a non-violent or non-sexual offense.

Given that the KDOC did not apply KRS 197.045(4) to Appellant's sentence for his 1995 Incest conviction, he cannot present a prima facie case that KRS 197.045(4) increased the punishment for that offense. In short, Appellant was permitted to receive good time credits on that sentence, and, in all likelihood, Appellant has now satisfied *that sentence*.[45] Thus, the issue

---

**43.** *See supra* note 16.

**44.** *Lemon v. Corrections Cabinet,* Ky.App., 712 S.W.2d 370, 371 (1986) (emphasis added), *citing Rodgers v. Wingo,* Ky., 467 S.W.2d 369, 370 (1971).

**45.** *Cf. Lienhart v. Commonwealth,* Ky., 953 S.W.2d 70 (1997) (where the defendant received concurrent sentences of one (1) and five (5) years, and the Court held that the appellant "completed service of" the one (1) year sentence after serving the first year of the five (5) year sentence). Of course, Appellant had no entitlement (or legitimate expectation) that he would be released from prison upon satisfaction of the minimum expiration date of his first sentence because under KRS 532.120(1)(a)—an original provision of the Kentucky Penal Code that was in existence two (2) decades before Appellant's offenses—an inmate is not released from KDOC custody until he satisfies the sentence with the longest unexpired time left to run. A hypothetical might further clarify this concept. If we twist the facts slightly, and imagine that if, instead of being the longest unexpired term because of the KRS 197.045(4) requirements for good time credit, Appellant's concurrent second sentence had "the longest unexpired time to run" because it was simply a longer sentence—say, fifteen (15) years instead of ten (10)—then it is clear that, although Appellant may have satisfied the first ten (10) year sentence when he reached the minimum expiration date for that offense, he could not be released from prison until he served the additional time he owed on the second fifteen (15) year offense. We find it inconsequential that it is KRS 197.045(4)'s precondition to good time credit rather than a longer maximum term that makes Appellant's second, concurrent sentence the one with the longest unexpired time to run.

before the Court is whether the application of KRS 197.045(4)'s condition precedent to eligibility for good time credits increases the punishment for the First–Degree Sodomy and Second–Degree Rape offenses for which Appellant was convicted in January, 1999. And that issue was squarely addressed and resolved in *Lozier*; applying KRS 197.045(4) to post–July 15, 1998 convictions for conduct prior to that date does not violate the Ex Post Facto Clause.

■ The Ex Post Facto Clause is "only one aspect of the broader constitutional protection against arbitrary changes in the law .... [and] the Constitution places limits on the sovereign's ability to use its lawmaking power to modify bargains it has made with its subjects."[46] What Appellant cannot demonstrate is that, when the General Assembly enacted KRS 197.045(4), the Commonwealth modified or breached any "bargain" with him in a manner that increased the punishment for his offenses. Each ten (10) year sentence Appellant received was within the applicable penalty range, and, even though KRS 197.045(4) places a precondition to Appellant's privilege to receive good time credits, there is no scenario under which Appellant will be required to serve more than ten (10) years for any of those offenses. Appellant's argument is that KRS 197.045(4) "changed the rules of the game" as to good time eligibility. Given that both KRS 197.045(1) non-educational good time and KRS 197.045(3) meritorious good time awards are discretionary, however, the fact remains that the Commonwealth never made a "bargain" with Appellant that would entitle him to good time reductions on *either* his first *or* his second sentence. Nor has the Commonwealth, via statute, regulation, or any another enactment, ever pledged that any credits an inmate accumulated toward one sentence would be applied in the same manner toward a subsequently-ordered concurrent sentence. This distinguishes the facts of this case from those in *Weaver v. Graham*, where Florida statutes provided for amounts of *mandatory* "gain time credits" to be deducted from the sentence of every prisoner with good conduct.[47] Stated otherwise, at the time that Appellant committed his crimes, there was no promise from the Commonwealth of Kentucky that, if convicted and sentenced to prison, Appellant could satisfy his sentence prior to its maximum expiration date simply by maintaining good conduct during his confinement. Other jurisdictions addressing ex post facto challenges to retrospective changes to *discretionary* good time schemes have concluded that the risk that an inmate *might* be deprived of good time credits that he or she *might* otherwise have received is "too attenuated and speculative to constitute an ex post facto violation."[48] In *Abed v. Armstrong*,[49] for example, the Second Circuit addressed an ex post facto challenge to a directive from the Connecticut Department of Corrections disqualifying any inmate found to be a prison gang member from earning good time credit. Because Connecticut's good time statute was discretionary, the court distinguished *Weaver*

---

**46.** *Lynce v. Mathis*, 519 U.S. at 440, 117 S.Ct. at 896, 137 L.Ed.2d at 71.

**47.** *See Weaver v. Graham*, 450 U.S. at 26, 101 S.Ct. at 962–3, 67 L.Ed.2d at 21.

**48.** *Hallmark v. Johnson*, 118 F.3d 1073, 1078 (5th Cir.1997) (finding no ex post facto violation where the Texas Board of Criminal Justice eliminated the discretion to restore good time credits previously forfeited for disciplinary violations), *cert. denied*, 522 U.S. 1003, 118 S.Ct. 576, 139 L.Ed.2d 415 (1997).

**49.** 209 F.3d 63 (2nd Cir.2000), *cert. denied* 531 U.S. 897, 121 S.Ct. 229, 148 L.Ed.2d 164 (2000).

*v. Graham* and *Lynce v. Mathis* and denied the ex post facto claim:

> Appellant's ex post facto claim fails for several reasons. His argument that the directive increased his punishment by restricting his eligibility to earn good time credit assumes that before the directive Section 18–7a(c) automatically entitled all inmates to be eligible to earn good time credit. That assumption is erroneous. Unlike the statutes at issue in both *Weaver* and *Lynce,* Section 18–7a(c) does not automatically confer the right to earn good time credit on all inmates. Rather, the statute states only that inmates "may" earn good time credit, thereby rendering good time credit a discretionary matter.[50]

Other courts have reached similar conclusions with respect to: (1) a Bureau of Prisons regulation that disqualified inmates with *prior* convictions for violent felonies from early release under 18 U.S.C.S. § 3621(e)—a statute permitting the BOP to reduce a prisoner's sentence by "not more than one year" upon the

prisoner's completion of a substance abuse treatment program;[51] (2) an Alabama Department of Corrections regulation regarding the availability of "incentive good time" ("IGT") for inmates whose "psychological or sociological profile contraindicates an early release back to society";[52] (3) Arkansas's outright repeal of its discretionary "extra good time" statute;[53] and (4) Michigan's repeal of its discretionary Prison Overcrowding Emergency Powers Act (POEPA).[54]

The discretionary nature of Kentucky's good time statutes dictates a similar result here. Stated in the plainest terms, although KRS 197.045(4) has been applied retrospectively in Appellant's case, the statute's additional requirement for Appellant's eligibility to earn *discretionary* good time credits towards his sentence is not an "increase in punishment" prohibited by the Ex Post Facto Clause. Accordingly, on the facts presented in this case, there is no constitutional basis to require the KDOC to ignore KRS 197.045(4) and KRS 532.120(1)(a) or to release Appellant prior to his maximum expiration date.

**50.** *Id.* at 66 (citations omitted). *See also Abed v. Commissioner of Correction,* 43 Conn.App. 176, 682 A.2d 558 (1996) (the same inmate raising the same argument with the same result), *cert. denied* 531 U.S. 897, 121 S.Ct. 229, 148 L.Ed.2d 164 (2000).

**51.** *Wottlin v. Fleming,* 136 F.3d 1032, 1037–8 (5th Cir.1998) ("Wottlin's eligibility for the early release program has always been subject to the discretion of the BOP. [The regulation] is merely a categorical determination by the BOP that it will not exercise that discretion in the case of inmates with a prior conviction for certain specified crimes.").

**52.** *Conlogue v. Shinbaum,* 949 F.2d 378, 382 (11th Cir.1991) ("[Regulation 420] awards incentive good time on a discretionary basis. Section II(h), in effect in 1977, and its 1986 addition, are couched in broad, discretionary terms. The regulation does not increase a prisoner's sentence. We thus hold that Regulation 420 II(h) does not violate the ex post

facto clause."), *cert. denied* 506 U.S. 841, 113 S.Ct. 123, 121 L.Ed.2d 79 (1992).

**53.** *Ellis v. Norris,* 333 Ark. 200, 968 S.W.2d 609, 611–612 (Ark.1998) (interpreting footnote 3 in *Department of Corrections v. Morales,* and distinguishing *Weaver v. Graham* because Arkansas's "extra good time" statute was discretionary), *cert. denied,* 532 U.S. 935, 121 S.Ct. 1389, 149 L.Ed.2d 313 (2001).

**54.** *Payne v. Michigan Department of Corrections,* 242 Mich.App. 638, 619 N.W.2d 719, 721 (2000) ("[Unlike *Weaver,*] [i]n the case at hand, the award of emergency credits was not similarly automatic. A significant feature was the discretionary authority given to the governor.... This discretionary authority means that what plaintiff lost was the opportunity to be awarded early release credits if the Governor determined that certain conditions, not under plaintiff's control, came into being.").

## IV. CONCLUSION

For the above reasons, we affirm the decision of the Court of Appeals.

LAMBERT, C.J.; COOPER, GRAVES, JOHNSTONE and WINTERSHEIMER, JJ., concur.

STUMBO, J., dissents by separate opinion.

STUMBO, Justice, dissenting.

The primary issue presented is whether the sex offender treatment requirement of KRS 197.045(4) has been applied *ex post facto*, thereby depriving Appellant of good time credit awarded on an earlier imposed concurrent sentence. A majority of this Court has determined that there were no violations of federal or state *ex post facto* protections. Respectfully, I must dissent, as it is my belief that KRS 197.045(4) has been impermissibly applied in this case.

The Court of Appeals considered a case similar to the one at bar in *Lozier v. Commonwealth*, Ky.App., 32 S.W.3d 511 (2000). Lozier was indicted in 1997 and pled guilty to a sex offense in 1999. During her sentencing hearing, she challenged the application of KRS 197.045(4) to a charge arising prior to the statute's enactment. The Court of Appeals determined that KRS 197.045(4) did not impose any additional punishment upon Lozier, and, thus, she was not disadvantaged. *Id.* at 514. The court reasoned that KRS 197.045(4) did not deprive Lozier of her opportunity to receive good time credit, but only deferred the effective date of such credit until a sex offender treatment program was completed. *Id.* At the conclusion of the treatment program, Lozier would then have any accumulated good time credited against the time remaining on her sentence. *Id.*

Appellant argues that this case can be distinguished from *Lozier* because he, un-like Lozier, has actually been deprived of previously earned good time credits. I agree.

Appellant had already amassed good time credit totaling more than three years before he entered guilty pleas to rape and sodomy charges in 1999. However, all of the credit Appellant accumulated was impermissibly withheld as a result of an improper calculation of his release date. Applying KRS 197.045(4) to the more recent charges, the Department of Corrections erroneously determined that Appellant's sentence stemming from his 1999 conviction was not subject to any earned good time credit. KRS 197.035(2) provides that "[i]f the additional sentence is designated to be served concurrently, or the commitment is silent, he shall be considered as having started to serve said sentence on the day he was committed on the first sentence." Essentially, Appellant began serving his sentence resulting from the 1999 conviction on the same day he began serving time on the 1995 incest conviction. Therefore, I conclude that any previously earned good time credit from the earlier sentence is equally applicable to the concurrent sentence imposed upon Appellant in 1999.

"To fall within the *ex post facto* prohibition, a law must be retrospective—that is, 'it must apply to events occurring before its enactment'—and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 896, 137 L.Ed.2d 63 (1997) (citations omitted).

KRS 197.045(4) was enacted on July 15, 1998. In this case, said statute is being applied to criminal offenses committed in 1994, which, of course, occurred prior to the enactment of the statute. As such,

there is no question that KRS 197.045(4) is being applied in a retrospective fashion.

Furthermore, the application of KRS 197.045(4) has disadvantaged Appellant by increasing his punishment. While Appellant's prison term has not in fact been increased beyond a period of ten years, the application of the statute against Appellant has, for all intents and purposes, worked to increase his punishment via the deprivation of good time credit previously awarded to him. If this time had been credited correctly, Appellant would have been released from state custody by now.

In my view, Appellant has experienced an increase in punishment; the *ex post facto* protections, which should have been afforded to Appellant, have been violated. Accordingly, under the circumstances and facts presented, I would hold that KRS 197.045(4) has been unconstitutionally applied to Appellant.

For the reasons aforesaid, I would reverse the decision of the Court of Appeals and remand to the Oldham Circuit Court for consideration of the merits of Appellant's habeas petition.